

FILED
APR 08 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1

JOHN DONNELLY SWEENEY
PRO SE

2

3826 DENVERTON ROAD
SUISUN CA 94585

3

captainjohnsweeney@gmail.com
(415)686-0907
@bucklerisland on X

4

JENNIFER FROST
PRO SE

5

3826 DENVERTON ROAD
SUISUN CA 94585

6

collectfrost@gmail.com
(415)272-2560

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

JOHN DONNELLY SWEENEY, an individual,
JENNIFER FROST, an individual,

11

Plaintiffs,

**CV25   3148**

**JCS**

12

v.

Case No.: _____

13

JUDGE CHRISTINE CARRINGER, in her

14

official and individual capacities; BRYANT
CANNON, Assistant Attorney General, in his

15

official and individual capacities; MATTHEW
BULLOCK, Assistant Attorney General, in his

16

official and individual capacities; EILEEN
WHITE, Director of the San Francisco Regional

17

Water Quality Control Board, in her official and
individual capacities; THOMAS FERRARA,

18

Sheriff of Solano County, in his official and
individual capacities; LINUS EUKEL, Director of

19

John Muir Land Trust, in his official and

20

individual capacities; JAVIER FERNANDEZ,
former SFRWQCB member and current SFEI

21

Director, in his official and individual capacities;
LARRY GOLDZBAND, Bay Conservation and

22

Development Commission Executive Director, in
his official and individual capacities; STEVEN

23

CHAPPELL, Director of the Suisun Resource

24

Conservation District, in his official and
individual capacities; STUART SIEGEL, in his

25

individual capacity; BRETT MOFFATT, EPA

26

Region 9 Administrator, in his individual capacity;
KATERINA GALACATOS, Army Corps of

27

Engineers San Francisco Region, in her individual
capacity; WILLIAM LEE, EPA Region 9, in his

28

individual capacity; ADRIENNE KLEIN, Bay

**COMPLAINT FOR VIOLATIONS OF 42
U.S.C. § 1983, BIVENS ACTIONS,
UNCONSTITUTIONAL TAKINGS,
EXCESSIVE FINES, CIVIL CONSPIRACY,
FRAUDULENT DEPRIVATION OF
PROPERTY, ABUSE OF PROCESS, AND
RACKETEERING**


**\*\*REQUEST FOR JURY TRIAL AND
MOTION TO STAY ALL LAWSUITS\*\***

Trial:

Judge:

Date:

Courtroom:

Conservation and Development Commission Enforcement Officer, in her official and individual capacities; SAN FRANCISCO ESTUARY INSTITUTE (SFEI), a California 501(c)(3) nonprofit corporation; DOES 1-50, inclusive, Defendants.

### COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983, BIVENS ACTIONS, UNCONSTITUTIONAL TAKINGS, EXCESSIVE FINES, CIVIL CONSPIRACY, FRAUDULENT DEPRIVATION OF PROPERTY, ABUSE OF PROCESS, AND RACKETEERING

**REQUEST FOR JURY TRIAL AND MOTION TO STAY ALL LAWSUITS**

#### INTRODUCTION

1. This action unveils a 25-year conspiracy of environmental fraud, corruption, and the deliberate destruction of a family's livelihood. Plaintiffs John Donnelly Sweeney (Husband) and Jennifer Frost (Wife), pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), seek justice against individual state and federal actors and the San Francisco Estuary Institute (SFEI). These defendants, acting under color of law or in conspiracy, stripped Plaintiffs of Point Buckler Island (valued at $40 million, sold for $3,783,770.77 in 2025, resulting in a net loss exceeding $36 million) and Chipps Island (valued at a minimum of $125 million based on the January 2025 Point Buckler sale, sold for $8.6 million in 2017, yielding a net loss of $116.4 million)—totaling over $152 million in property losses. This scheme, orchestrated to conceal millions in misappropriated taxpayer grants and thousands of fabricated fish restoration acres in California, bankrupted Plaintiffs while obliterating their constitutional rights. Section 1983 addresses state actors' personal-capacity violations of federal rights (*Hafer v. Melo*, 502 U.S. 21, 31 (1991)), while *Bivens* extends liability to federal officials (*Carlson v. Green*, 446 U.S. 14, 18 (1980)), both requiring direct culpability, not respondeat superior liability (*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Defendants Stuart Siegel, Steven Chappell, Katerina Galacatos, Brett Moffatt, Eileen White, Larry Goldzband, Bryant Cannon, Matthew Bullock, Linus Eukel, Javier Fernandez, Sheriff Thomas Ferrara, Judge Christine Carringer, and SFEI conspired to perpetrate this fraud, violating Plaintiffs' First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Plaintiffs demand a minimum of $165 million in damages, the return of their properties, and a federal investigation into



Legend

| Historical Tidal Marsh | Historic Bay Extent | Tidal Restoration Projects | Diversion Boundary | City |
| Present-Day Tidal Marsh | Present-Day Bay Extent | Completed Project | Public Land | Highway |
| Present-Day Tidal Flat | Urban Area | Planned Project | County Boundary | Railroad |

| 0 1 2 Miles | URS | DRMS | Suisun Marsh Region Existing Conditions | Figure 13-4 |
| | | 25315935 | | August 2008 |

Source: SFEI Eco-Atlas

URS
Phase 2 Risk Reduction Report Section 13 Final  F-4

FAKE MAP - POINT BUCKLER ISLAND IS CALLED TAYLOR #801 AND CHIPPS ISLAND IS
MURPHY #914 and MASTELOTTO #910 - THIS IS PART OF HOW SFEI AND SIEGEL DISGUISED
THE FRAUD MISSNAMING PROJECTS. RYER ISLAND IS USARMY AND SAN SOUCI #901
PRIVATE DUCK CLUB NONE HAD ANY FISH HABITAT CONSTRUCTION PROJECTS ON
THEM. ONLY COMPLETED CONSTRUCTION PROJECT IS BLACKCLOCK IN 2007 A TINY 70
ACRES ON THIS REGULATORY MAP. 2500 FAKED ACRES ON THIS MAP

1    statewide falsified tidal fish restorations.

2

3    The fraud commenced in 1999 when Defendant Stuart Siegel (currently a paid expert witness for

4    BCDC, River Watch, SFRWQCB, EPA, and DOJ against Sweeney), in collaboration with
     Defendant Steven Chappell of the Suisun Resource Conservation District and Defendant SFEI,
5
     falsified the EcoAtlas database—maintained by SFEI—to misrepresent Point Buckler, Chipps, and
6
     other private and military islands as completed public fish restoration projects with Army Corps
7
     permits. Suisun Marsh, spanning 88,000 acres, is the epicenter of fish restoration funding, receiving
8    approximately 75% of California's state and federal grants for such projects. No physical

9    restorations were constructed, nor land acquired, yet this deception secured millions from the EPA,

10   CalFed, the Integrated Regional Water Management Program, Bay Conservation Development
     Commission, Regional Water Quality Control Board, NOAA, Fish and Wildlife Service, and
11
     others—claiming 2,500 fish tidal restored acres by 2003, when none existed. The first 70 acres were
12
     not built until the Blacklock Restoration Project in 2007. SFEI's EcoAtlas has never been audited,
13
     and these fictitious restorations contributed to the near extinction of California's Delta Smelt and
14   Salmon. Sweeney, unaware of the fraud, purchased the islands in 2011 for duck hunting, mitigation,

15   and kiteboarding purposes. By 2015, after routine levee repairs triggered agency scrutiny on both

16   islands, his Public Records Act request uncovered 5,000 emails exposing the deceit from 2011 to

17   2015. Siegel initially offered to resolve Sweeney's agency issues with a $17,000 aerial photo
     assessment, which Sweeney declined. A week later, SFEI admitted that Siegel and Defendant
18
     Katerina Galacatos (USACE) had used private lands without consent and that no projects existed as
19
     of May 2015, promising to remove Point Buckler and Chipps from the database—a Fifth
20   Amendment due process violation (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Instead of

21   correcting this and protecting the fish, Defendants Brett Moffatt (EPA), Bruce Wolfe (deceased,

22   succeeded by White, SFRWQCB), Larry Goldzband (BCDC), and Galacatos signed a 2016

23   confidentiality agreement to sue Sweeney, burying the SFEI fraud. This launched a retaliatory
     campaign of $41 million in proposed fines and lawsuits against Sweeney—First Amendment
24
     retaliation actionable under § 1983 (*Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)).
25

26   Sweeney resisted, hiring a law firm and securing three landmark 2017 Solano County Superior Court

27   rulings from Judge Harry Kinnicutt. These decisions discredited Siegel, exposed the vindictive

28   prosecution, and cleared Sweeney of levee repair violations and excessive fines. These victories

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

1

2
    Cristina

3
    On Thu, Jun 18, 2015 at 10:32 AM, john sweeney <john a spinnerisland.com>

4
    wrote:
    I looked at maps its still color coded wrong in dark green. Both Chipps and

5
    Buckler should be the same as all Suisun Marsh with color corresponding to
    managed and muted tidal wetlands.

6

7
    Can you please correct this as its still very misleading as dark green still denotes
    completed construction.

8
    John Sweeney

9
    On Jun 17, 2015, at 2:12 PM, Cristina Grosso wrote:

10

11
        John,
        The Project Tracker database was initially populated in

12
        2006 with information received from the US Army of
        Engineers (USACE) and a mapping effort by Dr. Siegel. The

13
        projects in question, Point Buckler and Chipps Island East,
        were added during this time. We reviewed the

14
        documentation for the two projects, and the project
        information being displayed on EcoAtlas was not

15
        substantiated by the USACE permit records. Therefore,
        we've removed the projects from the database and

16
        EcoAtlas.

17
        Thank you for bringing this error to our attention. We rely

18
        on local landowners to help us maintain the accuracy of
        the maps presented in EcoAtlas.

19
        Can you let us know who your BCDC contact is?

20
        Many thanks,

21
        Cristina

22
        On Wed, Jun 17, 2015 at 8:55 AM, John Sweeney

23
        <john a spinnerisland.com> wrote:
        Can someone update me? It's been three weeks to review this and

24
        I need the source of the incorrect info and maps revised?

25
        John D. Sweeney
        (415)636-0907

26
        www.PointBucklerIsland.com

27
        www.Spinnerisland.com
        www.DeltaLandingCraft.com

28

provoked a fierce response from BCDC and SFRWQCB, who enlisted the EPA to overpower Sweeney with a massive federal lawsuit. Sweeney offered to donate the island to the agencies and construct a fish restoration project in confidential settlements, retaining just one acre for his business. The judge endorsed the plan, warning the federal and state parties, "If you go to trial, Sweeney will be bankrupt, and you will face a death spiral." The EPA, under Moffatt, rejected the offer and proceeded to a three-week bench trial in May 2019. Sweeney lost on liability, capped at $860,000, while the government lost on remedy, as their desired fish science project cost $3-5 million. In an unexpected move neither party requested, Federal Judge Kimberly J. Mueller sua sponte reopened *United States v. Sweeney*, granting the government six additional years and four attempts to devise an affordable fish plan for Sweeney. In 2025, a multi-million-dollar restoration order, issued after a sheriff's sale, compounded the harm and suggested Mueller's bias or collaboration with the government. Mueller added six years of drawn-out legal battles no one requested, causing Sweeney's law firm to accrue $2.5 million in unpaid legal fees, forcing him into bankruptcy in 2023. Mueller, who allowed the federal government multiple attempts to refine their case, denied Sweeney's request for a hearing on his ability to pay post-bankruptcy, stating the evidence period had closed at the 2019 trial, rendering his financial position six years later irrelevant to her.

The most shocking development in this decade-long legal battle was Appellate Justice Peter J. Siggins, a former Attorney General lawyer, reversing all three of Sweeney's 2017 wins in 2021—a statistically improbable outcome (<1% likelihood)—shielding the conspiracy for the AG's office and indicating bias (*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (no immunity for knowing violations)). In 2016, Siegel, already a paid scientific witness for every agency opposing Sweeney, recruited River Watch to extort $200,000 from Sweeney to fund a science project Siegel ran at SFSU—hardly the conduct of an impartial expert. The conspiracy deepened when Defendants White, Cannon, Goldzband, and Bullock enlisted Defendant Judge Christine Carringer—reassigned from family court in 2021 amid impeachment threats, recall efforts, and DUIs—to execute the land theft. On January 22, 2025, Carringer, exceeding her judicial authority, approved a sham sheriff's sale of Point Buckler to Defendant Linus Eukel and the John Muir Land Trust for $3,783,770.77 on an expired 2023 writ—a Fourth Amendment seizure lacking legal basis (*Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). Defendant Sheriff Ferrara oversaw the sham auction and enforced it with baseless arrests of Plaintiffs, broadcast on national television, while Judge Carringer denied them

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



BCDC's own Attorney tells BCDC staff Sweeney didn't do anything wrong but they still prosecuted

From: "Bowers, John@BCDC" <john.Bowers@bcdc.ca.gov>
Date: Thursday, September 3, 2015 at 1:26 PM
To: Adrienne Klein <adrienne.klein@bcdc.ca.gov>
Cc: "McCrea, Brad@BCDC" <brad.mccrea@bcdc.ca.gov>, "Weber, Maggie@BCDC" <maggie.weber@bcdc.ca.gov>, "Aichele, Cody@BCDC" <cody.aichele@bcdc.ca.gov>
Subject: Re: Point Buckler Island/Sweeney

Adrienne,

My answer is that at least at present we lack the assurance that we need to have that there in fact has been a violation. The SMPA is not like the MPA, under which a physical act, without more, requires a permit. Under the SMPA Sweeney or some other duck club owner can do anything he wants without getting a permit as long as it is consistent with his IMP. Sweeney has argued that everything has has done is consistent with his IMP. Unfortunately that is not an argument that can be casually dismissed, however much we might like to do so.

John

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

counsel during detention with reporters present—a Sixth Amendment violation (*Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)).

Since August 2022, Carringer has blocked all legal representation for Plaintiffs and their entity, Point Buckler Club LLC (incapable of pro se defense), explicitly denying counsel at hearings in August 2022, January, April, and May 2023, during Sweeney's 36-hour incarceration in April 2023, and during the January 22, 2025, arrests of both Plaintiffs—violating access to courts (*Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Frost, uninvolved until August 2022 via a Turnover & Assignment Order, lost her $3.2 million Point Buckler community property deed (canceled without quiet title) and marital interest in both islands, denied counsel despite pleas, as White sued her and Sweeney again in March 2024 (*CU24-01789*) for fraudulent transfers. Fernandez, as SFEI Director, perpetuates the EcoAtlas fraud for state and federal grants, having also served as a key SFRWQCB Board Member from 2015 to 2020, while Eukel profits from additional grants to "restore" Point Buckler with Siegel. In state court, Plaintiffs' timely March 13, 2025, motions to void the auction, judgment assignments, OSC, and a $1.2 million writ were denied by Carringer on March 19, 2025, despite fee waiver filings, with orders for a vexatious litigant motion and a third arrest—egregious acts exhausting state remedies and necessitating this federal complaint. Carringer's final act was issuing no-bail bench warrants for an OSC involving a nonexistent party, "San Francisco Bay."

Plaintiffs, bankrupted by Defendants' actions and barred from retaining counsel by Carringer's orders, request appointment of pro bono counsel from the Northern District's Federal Pro Bono Project under 28 U.S.C. § 1915(e)(1). Having been denied bankruptcy protection and lost over $152 million, facing repeated denials of representation since 2022, they lack resources to hire counsel despite diligent efforts thwarted by judicial interference. The complexity of this decade-long conspiracy—spanning multiple jurisdictions, defendants, and constitutional violations—presents exceptional circumstances warranting appointment (*Agyeman v. Corr. Corp. of Am.*, 966 F.2d 1515, 1523 (9th Cir. 1992)). Filing pro se in the Northern District of California, they seek this aid to pursue $165 million in damages, the return of their islands, and a federal investigation into falsified fish restorations.

This case transcends property theft: it is a coordinated abuse of power to siphon endangered species

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO
## Civil - Minutes

SWEENEY, JOHN D., ET AL V SAN FRANCISCO BAY (DMS)
**Case Number: FCS048136**
**OSC Hearing - Contempt/Failure to Comply - As To John Sweeney & Jennifer Frost**
in DPT 12, Fairfield Room 1
on 03/19/2025 at 10:00 AM

| Clerk | Judge | Reporter/ER |
|---|---|---|
| J. Hussein | Christine A Carringer | None |

Case called at 10:06 AM

**Appearances:**
John D. Sweeney, Plaintiff - Not Present.
Defendant is represented by Bryant Cannon - Present .

**Additional Appearances:**
Name: Kim Wells CSR 6455.

**Order To Show Cause:**

John Sweeney is ordered to appear on 05/22/2025 and show cause why sanctions should not be imposed in the sum of $ for:
Failure to Appear on 2/5/2025 (direct contempt) & Failure to Appear on 3/19/2025 (indirect contempt).

**Order To Show Cause:**

Jennifer Frost is ordered to appear on 05/22/2025 and show cause why sanctions should not be imposed in the sum of $ for:
Failure to Appear on 2/5/2025 (direct contempt) & Failure to Appear on 3/19/2025 (indirect contempt).

**Additional Minutes:**
This matter comes before the court for Contempt Hearing and Order of Examination as to John Sweeney and Jennifer Frost.

The court issues bench warrants to John Sweeney and Jennifer Frost, set to expire on March 18, 2026. No bail is set.

Attorney Cannon to file signed bench warrants.

The court pre-authorizes attorney Cannon to file a vexatious litigant motion as to Mr. Sweeney to be heard on May 22, 2025.

The court continues order of examination hearing as referenced below. Attorney Cannon to provide notice.

Future court dates must be in person.

The matter is set for:

| Date | Time | For | Ordered to Appear in |
|---|---|---|---|
| 05/22/2025 | 8:30 AM | OSC Hearing Contempt/Failure to Comply as to John Sweeney & Jennifer Frost | DPT 12, Fairfield Room 1 |

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

funds, crushing Plaintiffs' constitutional rights. They invoke § 1983 and *Bivens* precedents such as *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (policy-driven violations), and *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (due process failures), exposing a fraud demanding judicial and public reckoning. From 1999 to the present, Siegel and Chappell have profited, securing lucrative grants for 25 years, then serving as paid expert witnesses for the very agencies involved to cover their own fraud, all while using private and U.S. Army military property without landowner consent. Many suggest these two, who initiated the fraud, hold the agencies hostage, leveraging (extorting) them, though only a trial and depositions can reveal the truth. Ultimately, in 2015, every agency knew of the fraud, yet not one chose to save the endangered fish; instead, all voted to conceal the fraud they had funded for a quarter-century. It cannot go without notice that Siggins and Mueller's last case before retirement was Point Buckler, raising questions about whether the Attorney General's office strategically selected these judges, perhaps aware of their impending departures.

#### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal questions), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 1367 (supplemental state claims), and 18 U.S.C. § 1964 (RICO).

3. *Bivens* claims against federal officials (Moffatt, Galacatos, Lee) arise under federal law for Fourth, Fifth, and Fourteenth Amendment violations.

4. Venue is proper under 28 U.S.C. § 1391(b) as substantial events occurred in Solano County and the San Francisco Bay jurisdiction, within this district, encompassing Point Buckler and Chipps Islands.

5. All Defendants operate, reside, or are headquartered in the Northern District of California.

#### PARTIES

6. Plaintiff JOHN DONNELLY SWEENEY resides at 3826 Denverton Road, Suisun, CA 94585, purchased Point Buckler and Chipps Islands (~1,000 acres) in 2011 (Point Buckler valued at $40 million as of 2024, Chipps at $125 million based on comparables), and co-owns a $3.2 million Point Buckler grant deed with Jennifer Frost under California Family Code § 760, fraudulently canceled by Defendants Carringer, Cannon, and Bullock (Exs. U, D).

7. Plaintiff JENNIFER FROST resides at 3826 Denverton Road, Suisun, CA 94585, married Sweeney in 2014, co-owns the $3.2 million Point Buckler deed, holds a marital interest in Chipps

under California Family Code § 760, and was denied counsel despite her stake (Ex. P).

8. Defendant CHRISTINE CARRINGER, Solano County Superior Court Judge, sued in official and individual capacities, barred counsel, canceled the $3.2 million deed without quiet title (Exs. U, D), jailed Plaintiffs, approved the May 15, 2024, sham sale order (Ex. AA), issued defective warrants (Ex. N), and refused motions since 2021, acting as a collections agent despite family law experience.

9. Defendant BRYANT CANNON, Assistant Attorney General, sued in official and individual capacities, filed the April 15, 2024, Motion for Order Cancelling Instruments (Ex. U) and Motion for Supplemental Notice of Sale (Ex. Y), supported by his April 17, 2024, declaration (Ex. Z), misrepresented judgments, and pursued warrants and vexatious litigant motions for Defendant White.

10. Defendant MATTHEW BULLOCK, Assistant Attorney General, sued in official and individual capacities, supported Cannon's April 15, 2024, motions (Exs. U, Y), facilitated the sham sale (Ex. AA), and colluded to cancel the deed without due process for Defendant White.

11. Defendant EILEEN WHITE, SFRWQCB Director, sued in official and individual capacities, orchestrated the fraudulent sale ordered May 15, 2024, executed January 22, 2025 (Ex. AA), pursued invalid writs post-satisfaction, and signed the December 11, 2024, judgment assignment to JMLT (Ex. BB).

12. Defendant THOMAS FERRARA, Solano County Sheriff, sued in official and individual capacities, executed the illegal January 22, 2025, sale below fair market value using an expired writ (Ex. AA).

13. Defendant LINUS EUKEL, JMLT Director, sued in official and individual capacities, colluded with Siegel, White, and Fernandez to facilitate the sham sale, purchasing Point Buckler for $3,783,770.77 on January 22, 2025 (Ex. AA).

14. Defendant JAVIER FERNANDEZ, former SFRWQCB member (2014-2019) and current SFEI Director, sued in official and individual capacities, orchestrated 2015 SFRWQCB attacks and covers up EcoAtlas fraud (Ex. H) as part of SFEI's operations.

15. Defendant LARRY GOLDZBAND, BCDC Executive Director, sued in official and individual capacities, oversaw falsified data and failed to correct fraud (Ex. U-8), directing enforcement tied to the 2016 pact (Ex. K).

16. Defendant STEVEN CHAPPELL, SRCD Director, sued in official and individual capacities, targeted Sweeney despite SRCD's mission, falsifying data and reporting (Ex. L, p. 11:11-15).

17. Defendant STUART SIEGEL, sued individually, masterminded EcoAtlas fraud since 1997

through SFEI, acted as an expert, and profited from a River Watch settlement (Ex. H, p. 246).

18. Defendant BRETT MOFFATT, EPA Region 9 Administrator, sued individually, orchestrated the 2016 confidentiality agreement to sue Plaintiffs (Exs. K, 539).

19. Defendant KATERINA GALACATOS, Army Corps San Francisco Region official, sued individually, lost Sweeney's 2015 RGP 3 permit for Point Buckler and Chipps repairs (Ex. I, pp. 34:20-35:6).

20. Defendant WILLIAM LEE, EPA Region 9 official under Moffatt, sued individually, knew by October 2016 the 2015 RGP 3 permit was unprocessed (Ex. J, p. 132:11-14), escalating enforcement (Ex. J, p. 156).

21. Defendant ADRIENNE KLEIN, BCDC Enforcement Officer, sued in official and individual capacities, pursued enforcement despite knowing the 2015 Point Buckler RGP-3 permit was unprocessed (Exs. K, 534).

22. Defendant SAN FRANCISCO ESTUARY INSTITUTE (SFEI), a California 501(c)(3) nonprofit corporation headquartered at 4911 Central Ave., Richmond, CA 94804, conspired with state actors to falsify EcoAtlas data (¶¶ 25-31, Ex. H), facilitating the deprivation of Plaintiffs' rights and $152M+ in property losses (¶ 24) through fraudulent grant schemes and enforcement actions.

23. Defendants DOES 1-50 are unknown officials or actors from state and federal entities who participated in these acts.


#### DEFENDANTS' LACK OF IMMUNITY

24. Each Defendant lacks immunity under 42 U.S.C. § 1983 or *Bivens* due to actions exceeding authority or violating established rights:

   a. **Carringer**: Administrative acts canceling the deed (Ex. D) and ordering the sale (Ex. AA) with an expired writ (Ex. R) lack jurisdiction (*Forrester v. White*, 484 U.S. 219; *Mireles v. Waco*, 502 U.S. 9).

   b. **Cannon**: Falsified motions (Exs. U, Y, Z) without quiet title exceed prosecutorial duties (*Van de Kamp v. Goldstein*, 555 U.S. 335).

   c. **Bullock**: Supporting Cannon's motions (Exs. U, Y) negates immunity (*Van de Kamp*, supra).

   d. **White**: Orchestrating the sale (Ex. AA) with falsified data (Ex. H) and enforcement tied to the 2016 pact (Ex. K) violates *Knick v. Township of Scott*, 139 S. Ct. 2162.

   e. **Ferrara**: Executing the sale with an expired writ (Ex. AA) violates *United States v. Jones*,

565 U.S. 400.

f. **Eukel**: Colluding with White and Siegel in the sale (Ex. AA) negates immunity (*Dennis v. Sparks*, 449 U.S. 24).

g. **Fernandez**: Covering up EcoAtlas fraud (Ex. H) as SFEI Director negates immunity (*Dennis*, supra).

h. **Goldzband**: Overseeing falsified data (Ex. U-8) and enforcement tied to the 2016 pact (Ex. K) violates *Nieves v. Bartlett*, 139 S. Ct. 1715.

i. **Chappell**: Falsifying data (Ex. L) and targeting Sweeney with enforcement actions (Ex. L, pp. 14-15, 30:9-15) violates rights (*Dennis*, supra).

j. **Siegel**: Masterminding fraud (Ex. H) through SFEI negates immunity (*Dennis*, supra).

k. **Moffatt**: 2016 agreement (Ex. 539) violates *Bivens v. Six Unknown Named Agents*, 403 U.S. 388.

l. **Galacatos**: Suppressing the permit (Ex. I) and facilitating enforcement against Chipps Island (Ex. L, pp. 12:23-15:7) violates *Bivens*, supra.

m. **Lee**: Escalating enforcement (Ex. J) and supporting the Chipps Island sale tactics (Ex. J, p. 156:5-16) violates *Bivens*, supra.

n. **Klein**: Pursuing enforcement knowing permit issues (Exs. K, 534) and targeting Chipps Island (Ex. L, pp. 12:23-15:7) violates *Nieves*, supra.

o. **SFEI**: As a private entity, conspired with state actors to falsify EcoAtlas data (Ex. H) and secure fraudulent grants, negating immunity (*Dennis v. Sparks*, 449 U.S. 24).

p. **DOES 1-50**: Ultra vires acts (e.g., fraud, Ex. H) negate immunity (*Harlow v. Fitzgerald*, 457 U.S. 800).

#### STANDING

25. Plaintiffs have Article III standing (*Lujan v. Defenders of Wildlife*, 504 U.S. 555):

a. **Injury**: Sweeney lost Point Buckler (valued at $40M, sold for $3,783,770.77 on January 22, 2025, a net loss of over $36M) (Ex. AA) and Chipps (valued at $125M, sold for $8.6M in 2017, a net loss of $116.4M) (¶ 63), totaling over $152M, destroying his duck club business; Frost lost her $3.2M deed interest (Exs. U, D) and Chipps marital interest, suffering identical property and rights losses (First, Fourth, Fifth, Eighth, Fourteenth Amendments).

b. **Causation**: Defendants' fraud (Exs. H, NEW-C1-C7), permit suppression (Ex. I), enforcement (Exs. J, K, L, TT), deed cancellation (Exs. U, D), sale (Exs. Y, AA), and warrants (Ex.

1    N) caused these injuries.

2    c. **Redressability**: Vacating the sale, awarding $165M, enjoining enforcement (Exs. T, NN),

3    and restoring title redress these harms.

4

5    #### FACTUAL ALLEGATIONS

     ##### A. The EcoAtlas Fraud Foundation: 1997-Present Fake Fish Habitats on Private Property

6    26. From 1997-2004, Siegel, funded by federal and state sources and acting through SFEI, falsified

7    EcoAtlas, listing Point Buckler and Chipps as restored without permits, securing millions in grants

8    (18 U.S.C. §§ 1341, 1343) (Exs. H, NEW-C).

9    27. Siegel admitted no legal basis for his 2016 report (Ex. H, pp. 13-14); Chappell confirmed Point

10   Buckler's tidal status (Ex. L, p. 214:14-16; Ex. 577).

11   28. February 12, 2016: Siegel emailed Gafni, admitting tidal mapping for CALFED, tweaking for

     grants (Ex. NEW-C, SIEGEL0001882-1884).

12   29. December 10, 2014: Siegel alerted Davis-Fadtke to Sweeney's 2014 re-diking levee repair,

13   looping Chappell (Ex. NEW-C1, AJ EXHIBIT 587).

14   30. May 6, 2015: Siegel offered Sweeney a $17,000 assessment to profit from his fraud (Ex. NEW-

15   C2, SIEGEL0001843-1846).

16   31. May 13-14, 2015: Sweeney confronted Siegel, proving managed status; Siegel admitted no visits

17   but one boat trip near Island in 2003, Schweitzer confirming no site visits – no science (Ex. NEW-

     C3-C6, AJ EXHIBITS 501, 530, 341, SIEGEL0001869).

18   32. May 14, 2015: Siegel warned Schweitzer of a "HIGH RISK situation" dealing with Sweeney

19   (Ex. NEW-C7, SIEGEL0001870).

20   33. 2000-2004: Chappell, under Siegel and SFEI, included Point Buckler and Chipps in CALFED

21   grants as Solano county-owned then later Privately owned (Ex. L).

22   34. Chappell admitted SRCD's permitting role (Ex. L, p. 11:11-15) but denied aiding Sweeney

23   beyond RGP 3 submission 2011 (Ex. L, p. 27:23-28:1).

24   35. By 2003, Suisun Marsh plans claimed 2,500 restored acres, with only 70 real (Blacklock)

25   finished in 2007, obstructing justice (18 U.S.C. § 1503) (Ex. 10).

26   ##### B. Sweeney's Island Purchases and Initial Retaliation and Fraud Cover-Up: 2011-2015

27   36. 2011: Sweeney purchased Point Buckler and Chipps (~1,000 acres), unaware of EcoAtlas fraud,

28   likely known only to Siegel, Chappell, and SFEI.

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

1    37. June 22, 2011: Chipps levee breach prompted RGP 3 repairs, triggering a cover-up by Galacatos,

2    Lee, Goldzband, Klein, and Chappell (Exs. L, 551).

3    38. Chappell admitted Sweeney's plan (Ex. L, p. 19:19-23), SRCD's submission (Ex. L, p. 24:23-24;

4    Ex. 551), and reported it as unauthorized (Ex. L, pp. 14:5-15:7; Ex. 548).

5    39. 2011-2014: Chappell falsely emailed Goldzband and Galacatos (Ex. NEW-F1, USACE0040286-

    87).

6    40. February 16, 2016: Chappell told Gafni Point Buckler was "tidal" in 2012 (Ex. NEW-F, AJ

7    EXHIBIT 577), misrepresenting for SRCD gain and seeking a $41M fine cut to SRCD..

8    41. February 2, 2015: Galacatos accepted Sweeney's RGP 3 but didn't process it (Ex. 501, p. 7; Ex.

9    I, pp. 34:20-35:6), obstructing justice (18 U.S.C. § 1512). Hid Permit

10    42. Klein knew by July 2015 RGP-3 permit was unprocessed (Exs. K, 534, p. 38), yet pursued

11    enforcement (Ex. K, pp. 11:4-8, 17:19-20).

12    43. Lee knew by October 2016 of permit (Ex. J, p. 132:11-14), escalating actions (Ex. J, p. 156:5-

    16).

13    44. Chappell's reports (Ex. L, p. 30:9-15; Ex. 552) and photos (Ex. L, p. 42:22-24; Ex. 554) fueled

14    enforcement, despite his duty (Ex. L, p. 12:11-15).

15    45. December 8, 2015: Lee noted Goldzband's enforcement intent without real violations (Ex.

16    NEW-F2, USEPA0008594).

17    46. Had the RGP-3 permit been processed in 2015, no violations would have led to lawsuits or

    losses.

18    47. 2015: Fernandez, acting through SFRWQCB, and Goldzband imposed $41M fines (reduced to

19    $4.8M plus $9M mitigation offset), citing EcoAtlas, constituting extortion (18 U.S.C. § 1951) (Exs.

20    K, NEW-F).

21    48. Chappell sought a $41M fine cut (Ex. NEW-F), contradicting SRCD's mission (Ex. L, pp. 42-44;

22    Ex. NEW-F1).

23    49. May 2015: Sweeney's PRA request revealed 5,000 emails (Ex. 10), prompting SFEI to remove

24    Point Buckler and Chipps, admitting Siegel and Army Corps lied (Ex. 10), though falsifications

    persisted (Ex. H, pp. 33-34).

25    50. July 20, 2015: Siegel emailed Toms about Sweeney's efforts and threats against Chappell (Ex.

26    15).

27

28    ##### C. Federal Assault – EPA Steps In and Takes Case Away from Army Corps to Bring *USA v.

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

Sweeney* – Judge Mueller's Role: 2018-2025

51. January 14, 2016: Moffatt orchestrated a confidentiality agreement with Wolfe (deceased SFRWQCB and SFEI) , Goldzband, and Galacatos to sue Plaintiffs (Exs. K, 539), leading to *United States v. Sweeney* (Ex. TT).

52. Lee called it a "strong-arm" tactic suing Sweeney (Ex. J, p. 156:5-16), monitoring Sweeney's Facebook (Ex. J, p. 124:22-25), inspecting February 9, 2017 (Ex. J, p. 138:1-14), despite RGP3 permit knowledge (Ex. J, p. 132:11-14).

53. Klein ignored Sweeney's June 2016 settlement compromise (Ex. K, Ex. 541, p. 91:7-25) and July 2016 plan (Ex. K, Ex. 543, p. 99:1-9), coordinating with Siegel (Ex. K, p. 93:19-21; Ex. NEW-C).

54. Chappell's reporting (Ex. L, pp. 14-15, 42-44; Ex. NEW-C1) facilitated this.

55. May 19, 2016: Siegel gave Wren talking points to vilify Sweeney, profiting $200,000 River Watch Fed shakedown lawsuit v Sweeney (Exs. 16-18, G).

56. November 2017: Defendants forced Chipps' sale to California DWR for $8.6M (valued at $125M based on appraisals and regional comparables, a net loss of $116.4M), leveraging Point Buckler enforcement.

57. **Tactics to Force the Chipps Island Sale (2011-2017)**: The forced sale of Chipps Island in November 2017 was the culmination of a multi-year campaign by Defendants Chappell, Siegel, SFEI, Galacatos, Moffatt, Lee, Klein, and Goldzband to misrepresent Chipps Island's ecological status, suppress permits, and initiate enforcement actions, mirroring the tactics later used against Point Buckler. Beginning in 2011, Defendant Chappell, as SRCD Director, reported Plaintiff Sweeney's levee repair on Chipps Island (Duck Club #915) using cargo containers, despite knowing Sweeney's plan and SRCD's submission of an Urgent/Unforeseen Maintenance Application under RGP3 (Ex. L, pp. 19:19-23, 24:23-24; Ex. 551). Chappell admitted he reported the repair as unauthorized to the Army Corps of Engineers (David Wickens) and BCDC (Adrienne Klein) on August 31, 2011, claiming it was his duty under RGP3, though he was under no compulsion to do so (Ex. L, pp. 14:5-15:7, 43:23; Ex. 548).

58. **Chappell's Failure to Assist and Bad Faith Reporting**: Despite SRCD's mission to assist landowners with permitting (Ex. L, p. 11:11-15; Ex. 547), Chappell failed to help Sweeney secure an alternative permit for the cargo container method, instead advising Sweeney to contact the Corps directly (Ex. L, p. 20:18-22). Chappell then followed up on October 19, 2011, asking Wickens if the Corps had issued a letter to Sweeney regarding the "unauthorized levee repair" (Ex. L, p. 30:9-15;

Ex. 552), and on January 12, 2012, inquired about the status of the enforcement case after Dan Logan (NMFS) raised it at a regulatory meeting (Ex. L, p. 38:9-14; Ex. 505). Chappell also participated in a conference call on October 29, 2012, discussing Sweeney's response to a Corps notice of alleged violation (Ex. L, p. 40:4-7; Ex. 553), further pressuring Sweeney.

59. **Regulatory Collusion to Escalate Enforcement**: Defendants Galacatos, Klein, and Goldzband collaborated with Chappell and SFEI to escalate enforcement against Sweeney on Chipps Island. Galacatos, who accepted Sweeney's 2015 RGP3 permit application for Point Buckler Island repairs, failed to process it (Ex. I, pp. 34:20-35:6), while Klein, aware by July 2015 that the permit was unprocessed, pursued enforcement actions (Exs. K, 534, p. 38). Goldzband, informed by Chappell's false reports (Ex. NEW-F1, USACE0040286-87), directed enforcement efforts, as noted by Lee on December 8, 2015 (Ex. NEW-F2, USEPA0008594). This collusion prevented Sweeney from maintaining Chipps Island as a managed wetland, leading to violations that fueled the 2017 sale.

60. **Siegel and SFEI's Role in Misrepresentation**: Defendant Siegel, acting through SFEI, falsified EcoAtlas data listing Chipps as a restored tidal marsh (Ex. H, pp. 33-34), providing the scientific basis for the enforcement actions. His misrepresentations, admitted in 2016 (Ex. H, pp. 13-14), were used by Chappell to justify reporting Chipps Island violations (Ex. L, p. 14:5-7), aligning with SFEI's broader scheme to secure grants (Ex. NEW-C, SIEGEL0001882-1884). This misrepresentation mirrored the tactics used against Point Buckler, where Sweeney's testimony confirmed the island was not tidal in 2010-2011 (Sweeney Depo., pp. 13:18-21, 17:8-15).

61. **Moffatt and Lee's Strong-Arm Tactics**: Defendants Moffatt and Lee orchestrated the broader federal assault that forced the Chipps sale. Moffatt's 2016 confidentiality agreement with White, Goldzband, and Galacatos (Exs. K, 539) set the stage for *United States v. Sweeney*, while Lee described the enforcement as a "strong-arm" tactic (Ex. J, p. 156:5-16). Their actions, including monitoring Sweeney's activities (Ex. J, p. 124:22-25) and inspections (Ex. J, p. 138:1-14), created a climate of regulatory pressure that, combined with the $41M fines (reduced to $4.8M plus $9M) imposed by Fernandez through SFEI and Goldzband (Exs. K, NEW-F), left Sweeney financially unable to resist the 2017 sale of Chipps Island to California DWR for $8.6M, a net loss of $116.4M.

62. *United States v. Sweeney*: Judge Kimberly J. Mueller ruled in 2019, capping penalties at $860,000 (483 F. Supp. 3d 871, Ex. TT).

63. 2020: Mueller reopened sua sponte, barring new evidence (Ex. UU), assigning Magistrate Peterson (Ex. WW).

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

64. 2020-2025: DOJ refined its plan, exploiting Plaintiffs' 2023 bankruptcy (Exs. V, X).

65. February 12, 2025: Mueller ordered a multi-million-dollar restoration violating her own 2019 order not to exceed $860,000 (Ex. XX), post-January 22, 2025, sale (Ex. AA), suggesting bias (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868).

66. Mueller's rulings relied on Siegel's and SFEI's data (Exs. NEW-C, 18) and Chappell's reports (Ex. NEW-F1).

##### D. State Court Land and Grant Deed Theft – Judge Carringer's Judicial Bias and Sham Sheriff Auction: 2015-2025

67. September 3, 2015: Goldzband's counsel Bowers emailed Klein et al. (Ex. KK), stating Sweeney committed no violation, yet Goldzband pursued enforcement.

68. Goldzband directed this to hide EcoAtlas fraud, retaliating for Sweeney's 2015 PRA and filings.

69. May 1, 2024: Sweeney emailed White, announcing a protest (Ex. MM, p. 12).

70. May 4, 2024: Sweeney mailed a forged press release to White (Ex. MM, pp. 9-10).

71. May 9, 2024: Carringer granted Cannon's motions to cancel instruments and advance the sale (Ex. OO).

72. May 29, 2024: White and Cannon filed declarations (Exs. LL, MM), securing a TRO on May 31, 2024 (CU24-04182, Ex. NN).

73. The TRO barred Sweeney from contacting White or possessing firearms, timed to deter court attendance during Grant Deed Cancellation and Sheriff Sale orders.

74. January 14, 2016: RiverWatch and Siegel coordinated with others to file an ESA Notice against Sweeney (Ex. F), using Siegel's data (Ex. H, p. 246; Ex. NEW-C).

75. 2017: This settled for $40,000 and $200,000 to Siegel's study at SFSU (Ex. G).

76. Carringer denied recusal (CCP §§ 170.1, 170.6): (a) Misconduct history; (b) September 13, 2022, stricken (Ex. A); (c) July 6, 2023, stricken with arrest threats (Exs. B, D, p. 36:15-23); (d) March 25, 2024, removal (Ex. C); (e) May 15, 2024, deed cancellation and sale (Exs. U, D, Y, AA); (f) February 4, 2025, stricken (Ex. E).

77. Carringer's bias violates *Wechsler v. Superior Court*, 224 Cal.App.4th 384.

78. April 15, 2024: Cannon filed motions to cancel the 2015 Deed and sell Point Buckler (Exs. U, Y) without quiet title (CCP § 760.010).

79. Bullock supported Cannon (Ex. U, pp. 45-46).

80. May 15, 2024: Carringer canceled the deed (Ex. D), extinguishing Plaintiffs' $3.2M interest

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

1  without notice (CCP § 415.10) or hearing (*Deutsche Bank v. Pyle*, 13 Cal.App.5th 513).

2  81. This occurred during Point Buckler Club's bankruptcy (Case No. 23-20755, filed March 10,

3  2023, dismissed July 10, 2023) (Exs. V, W, X).

4  82. Carringer relied on Civil Code § 3412 (Ex. U, p. 7), inapplicable without proof (*Thompson v.
   Ioane*, 11 Cal.App.5th 1180).

5  83. Notice was insufficient (24 days, Ex. U, pp. 45-46) given pro se status and incarceration (Ex. P).

6  84. Defendants avoided quiet title (CCP § 760.010), stripping Frost's rights (Family Code § 760;

7  *Nickell v. Matlock*, 206 Cal.App.4th 934).

8  85. March 10, 2023: Point Buckler Club filed Chapter 11, listing the $3.2M deed (Exs. V, W; *In re

9  Mortgage Store, Inc.*, 773 F.3d 990).

10  86. June 10, 2023: Reorganization plan filed (Exs. V, W); dismissed July 10, 2023 (Ex. X).

11  87. Post-dismissal, Cannon filed cancellation and sale motions (Exs. U, Y, Z), granted May 15, 2024
   (Exs. D, AA), exploiting a 2022 turnover order barring counsel (Ex. U, p. 6; *Merco Constr. Eng'rs

12  v. Mun. Ct.*, 21 Cal.3d 724).

13  88. August 2023: Cannon and Bullock reopened bankruptcy to recover $20,000 from counsel

14  Voisenat (Ex. P).

15  89. April 15, 2024: Cannon and Bullock sought the sale with an expired writ (August 23, 2023,

16  lapsed February 19, 2024, CCP § 699.530(d)) (Ex. Y).

17  90. Cannon's April 17, 2024, declaration showed no writ renewal (Ex. Z).

18  91. May 15, 2024: Carringer ordered the sale verbatim (Ex. AA).

19  92. November 25, 2024: Cannon anticipated judgment assignment (Ex. DD), executed with Eukel
   (Ex. BB), acknowledged by White December 11, 2024.

20  93. January 22, 2025: Ferrara sold Point Buckler to Eukel for $3,783,770.77 (Ex. CC), exceeding the

21  $3,680,997.96 judgment (Exs. DD, BB), yet White concealed satisfaction (Ex. T), and Plaintiffs

22  were arrested, barred from legal counsel during the arrest.

23  94. November 25, 2024: White assigned the judgment (Ex. BB), confirmed by Eukel January 17,

24  2025 (Ex. CC, Att. A), yet pursued post-sale enforcement (Ex. T).

25  95. August 23, 2023, writ (Levy File No. 2023003172) expired February 19, 2024 (Ex. R), levied

26  October 26, 2023 (Ex. Z), with no new writ.

   96. Notice failed CCP § 701.540 (no posting, no EJ-150) (Exs. Z, AA).

27  97. September 12, 2024: Cannon's cost memo misstated the judgment (Ex. S).

28  98. March 4, 2025: White filed a $1,328,017.75 writ (Ex. T), unverified (CCP §§ 685.070(b),

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

1    699.520(b)(5)).

2    99. February 28, 2025: Solano Court continued an OSC to March 19, 2025 (Ex. M), despite

3    rescheduling to May 22, 2025.

4    100. March 19, 2025: Carringer held the OSC without Plaintiffs, issuing OSCs and warrants (Ex. N),

     ignoring their February 9, 2025, fee waiver applications with no mention of public defenders.

5

6    101. March 13, 2025: Plaintiffs filed an ex parte motion to dismiss the OSC and vacate the sale (Ex.

     O), switched to May 22, 2025, yet Carringer proceeded.

7    102. January 23, 2025: The Daily Muck reported Sweeney's arrest, noting sale errors (Ex. P).

8    103. March 19, 2025: Carringer's defective OSCs, warrants, and vexatious litigant approval show

9    bias (Ex. N).

10   104. March 13, 2025: Sweeney moved to vacate the March 4, 2025, writ and order satisfaction (Ex.

11   T), asserting the $3,783,770.77 bid satisfied the judgment (*Babb v. Superior Ct.*, 3 Cal.3d 841;

     *Horath v. Hess*, 225 Cal.App.4th 1484).

12

13   105. Carringer refused to hear these motions, issuing warrants instead for "San Francisco Bay" and

     ordered Cannon to file vexatious litigant motions as to Sweeney being heard May 22, 2025 Sweeney

14   v San Francisco Bay (Ex. N).

15

16   ##### E. Judicial Bias on Appeal and in Federal Court – Siggins and Mueller

17   106. 2017: Judge Kinnicutt ruled for Plaintiffs in *FCS048136* (RWQCB) and *FCS057728*

     (BCDC), finding no violations, vindictive prosecution, excessive fines, and unfair hearings (Exs.

18   EE-GG).

19   107. February 18, 2021: Justice Patrick Siggins reversed all three (A153583, A153585, A153582)

20   (Exs. HH-JJ).

21   108. **Statistical Analysis**: Reversal odds <1% (California Judicial Council, 2020), with Siggins'

22   AG background suggesting bias.

23   109. Mueller's 2020 reopening (Ex. UU) and 2025 order (Ex. XX) align with Siggins, raising ex

     parte concerns.

24

25   110. Mueller's rulings relied on Siegel's and SFEI's falsified data (Exs. NEW-C, 18) and Chappell's

     reports (Ex. NEW-F1), amplifying the conspiracy's reach.

26

27   #### ACTS OUTSIDE THE SCOPE OF JUDICIAL IMMUNITY

28   111. Defendant Judge Christine Carringer's actions, detailed in paragraphs 1, 8-12, 76-105, and 117-

132, include non-judicial conduct and acts taken without jurisdiction, stripping her of absolute judicial immunity under 42 U.S.C. § 1983. These acts, undertaken in her official and individual capacities, directly violated Plaintiffs' constitutional rights and were not part of her judicial function, nor within her jurisdiction as a Solano County Superior Court judge.

112. **Denial of Counsel as a Non-Judicial Act**: Since August 2022, Carringer has barred Plaintiffs Sweeney, Frost, and their entity, Point Buckler Club LLC, from obtaining any legal representation—paid or public—in multiple proceedings (e.g., *FCS057728*, *FCS048136*, *CU24-01789*) (¶¶ 1, 12, 76, 87-88). She explicitly denied counsel at OSC hearings in August 2022, January 2023, April 2023, and May 2023, during Sweeney's April 2023 arrest where he was held for 36 hours without a lawyer, during the January 22, 2025, arrest of both Plaintiffs, and on March 19, 2025, ignoring their February 9, 2025, fee waiver applications with no mention of public defenders (¶¶ 1, 93, 100). This blanket prohibition, including denying counsel to Frost, a non-party until 2024, and to an LLC incapable of pro se representation, constitutes an administrative act, not a judicial ruling on a case's merits (*Forrester v. White*, 484 U.S. 219, 227-29 (1988)). By systematically blocking access to counsel, Carringer violated Plaintiffs' due process rights under the Fourteenth Amendment and their right to court access (*Bounds v. Smith*, 430 U.S. 817, 828 (1977)), acts outside her judicial role.

113. **Deed Cancellation Without Quiet Title Lacked Jurisdiction**: On May 15, 2024, Carringer canceled Plaintiffs' $3.2 million grant deed in Point Buckler (Ex. D) without a quiet title action, as required by California Code of Civil Procedure § 760.010 (¶¶ 1, 80, 98-99). This action, based on Defendant Cannon's April 15, 2024, motion (Ex. U), extinguished Plaintiffs' property interest without notice or hearing (¶¶ 80, 83), violating due process (*Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950)). Carringer lacked jurisdiction to cancel the deed absent a quiet title proceeding, rendering her act non-judicial and unprotected by immunity (*Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871)).

114. **Sham Sheriff's Sale as an Administrative Act**: Carringer ordered the January 22, 2025, sheriff's sale of Point Buckler (Ex. AA) on an expired August 23, 2023, writ (Ex. R, expired February 19, 2024, per CCP § 699.530(d)) (¶¶ 1, 89-91, 95). This order, issued verbatim from Cannon's motion (Ex. Y) without independent judicial review (¶ 91), was a ministerial act to facilitate property transfer, not a judicial adjudication (*Forrester*, 484 U.S. at 227). By approving an illegal sale, Carringer acted as a collections agent for White and Eukel, outside her judicial capacity, violating Plaintiffs' Fourth and Fifth Amendment rights.

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

115. **Issuance of Defective Warrants and OSCs**: On March 19, 2025, Carringer issued defective Orders to Show Cause (OSCs) and bench warrants (Ex. N) without Plaintiffs present, ignoring their February 9, 2025, fee waiver applications with no mention of public defenders, and despite a prior agreement to reschedule (¶¶ 99-100, 103). These warrants, following her refusal to hear Plaintiffs' March 13, 2025, motions (Ex. O, Ex. T), were administrative enforcement measures, not judicial rulings, as they lacked procedural due process (*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Such acts fall outside judicial immunity (*Forrester*, supra).

116. **Conspiracy with Non-Judicial Actors**: Carringer conspired with Defendants Cannon, Bullock, White, and Eukel to deprive Plaintiffs of their property and rights (¶¶ 1, 76-105, 120). On March 19, 2025, she instructed White's lawyer to file a vexatious litigant motion (¶ 1, 103), a directive to harass Plaintiffs rather than adjudicate a case, constituting a non-judicial act in concert with others (*Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980)). Her coordination with Defendants to execute the sham sale (¶¶ 89-93) further places her actions outside judicial protection.

117. **Bias and Misconduct Undermining Judicial Role**: Carringer's history of misconduct—2017 recall, 2018 impeachment, DUIs, and reassignment from family court for bias (¶ 76(a))—combined with her lack of civil law training (¶ 77), suggests her actions were not impartial judicial acts but part of a conspiracy to aid Defendants (¶ 95). Her refusal to recuse despite multiple motions (¶ 76(b)-(f)) and threats of arrest (¶ 76(c)) further indicate non-judicial bias (*Wechsler v. Superior Court*, 224 Cal.App.4th 384 (2014)), stripping her of immunity.

118. **Impact of Arrests Without Counsel**: Carringer's orders led to Sweeney's April 2023 arrest, where he was held for 36 hours without access to a lawyer, and the January 22, 2025, arrest of both Plaintiffs, again barring counsel (¶¶ 1, 93), exacerbating the harm of her counsel denials and constituting administrative overreach, not judicial acts.

119. These non-judicial acts and jurisdictional overreaches directly caused Plaintiffs' injuries: loss of over $152 million in property, denial of counsel, unlawful arrests, and chilled speech (¶¶ 1, 25).

#### CAUSES OF ACTION

120. Plaintiffs incorporate paragraphs 1-119 herein.

##### COUNT I: 42 U.S.C. § 1983 – Fourteenth Amendment Due Process

121. Defendants Carringer, Cannon, Bullock, Chappell, Siegel, Klein, Goldzband, and SFEI, acting under color of state law or in conspiracy, violated Plaintiffs' Fourteenth Amendment due process

rights, both procedural and substantive, by depriving them of protected property and liberty interests. Carringer denied Plaintiffs counsel, canceled their \$3.2M deed (Ex. D), and refused motions (Exs. O, T) (¶¶ 76-105), stripping their property interest in Point Buckler and Chipps and their liberty interest in freedom from arrests without legal representation (¶¶ 93, 118). Cannon and Bullock filed fraudulent motions (Exs. U, Y) (¶¶ 78-92) to facilitate these deprivations. Chappell reported Sweeney, including Chipps Island violations (Ex. L, ¶¶ 38-44, 57-58), initiating the enforcement cascade. Siegel, through SFEI, falsified EcoAtlas (Ex. H, ¶¶ 26-32), underpinning the fraudulent scheme. SFEI maintained and disseminated this falsified data, enabling state actors' actions (¶¶ 26-35). Klein pursued enforcement (Exs. K, 534, ¶ 42), and Goldzband oversaw falsified data (Ex. U-8, ¶¶ 47, 67), both escalating the deprivation. These acts, lacking notice or hearing (*Mathews v. Eldridge*, 424 U.S. 319), caused \$152M+ in property losses and personal liberty violations.

##### COUNT II: 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure

122. Defendants Carringer, Cannon, Bullock, Ferrara, Siegel, Klein, Goldzband, and SFEI, acting under color of state law or in conspiracy, violated Plaintiffs' Fourth Amendment rights through unreasonable seizures of their property and persons. Carringer approved the January 22, 2025, sham sale of Point Buckler (Ex. AA) and issued defective warrants (Ex. N) leading to Plaintiffs' arrests (¶¶ 91-103). Cannon and Bullock orchestrated the sale with an expired writ (Exs. Y, Z, ¶¶ 89-92). Ferrara executed the illegal sale and arrested Plaintiffs (¶ 93). Siegel, through SFEI, provided fraudulent data (¶¶ 26-32) justifying the property seizure. SFEI's falsified EcoAtlas data supported the enforcement actions (¶¶ 26-35). Klein and Goldzband enforced baseless actions (¶¶ 42, 67), supporting the seizure scheme (*United States v. Jones*, 565 U.S. 400). These actions caused the loss of Point Buckler and Plaintiffs' wrongful detention.

##### COUNT III: 42 U.S.C. § 1983 – First Amendment Retaliation

123. Defendants Carringer, Cannon, Bullock, White, Siegel, Chappell, Klein, Goldzband, and SFEI, acting under color of state law or in conspiracy, retaliated against Sweeney's exercise of First Amendment rights through his 2015 PRA request (Ex. 10), permit filing (Ex. 501), and 2024 protest (Ex. MM, ¶¶ 69-70). Carringer, Cannon, and Bullock canceled the deed and approved the sale (Exs. U, AA, ¶¶ 78-92) as direct reprisals. White pursued enforcement (¶¶ 72-98) to punish Sweeney's speech. Siegel, through SFEI, and Chappell falsified data and reported violations (¶¶ 26-50, 67, 57-60), escalating retaliation. SFEI's EcoAtlas fraud provided the pretext for these actions (¶¶ 26-35).

1  Klein and Goldzband enforced retaliatory measures (*Nieves v. Bartlett*, 139 S. Ct. 1715), causing

2  $152M+ in losses.

3

4  ##### COUNT IV: 42 U.S.C. § 1983 – Fifth Amendment Takings (Carringer's Deed Cancellation)

   124. Defendant Carringer, acting under color of state law, effected an unconstitutional taking under

5  the Fifth Amendment by canceling Plaintiffs' $3.2M deed on May 15, 2024 (Ex. D), without quiet

6  title or compensation, based on Cannon's motion (Ex. U, ¶¶ 78-80). This action extinguished their

7  $40M property interest in Point Buckler (¶ 80) with no compensation offered or provided, violating

8  *Knick v. Township of Scott*, 139 S. Ct. 2162, and causing property and business loss.

9

10 ##### COUNT V: 42 U.S.C. § 1983 – Fifth Amendment Takings (Sheriff's Sale and Chipps Sale)

   125. Defendants White, Cannon, Bullock, Ferrara, Eukel, Chappell, Siegel, Klein, Goldzband, and

11 SFEI, acting under color of state law or in conspiracy, effected unconstitutional takings under the

12 Fifth Amendment via the January 22, 2025, sale of Point Buckler ($40M, sold for $3,783,770.77,

13 Ex. AA) and the 2017 Chipps sale ($125M, sold for $8.6M, ¶ 56), both without just compensation.

14 Cannon and Bullock filed the motion (Ex. Y, ¶ 89). White pursued it (¶¶ 92-98). Ferrara executed it

15 (¶ 93). Eukel colluded (¶ 93). Chappell targeted Chipps with bad faith reporting (Ex. L, ¶¶ 57-58).

16 Siegel, through SFEI, falsified EcoAtlas data for Chipps (¶ 60). SFEI's data underpinned the

17 enforcement (¶¶ 26-35). Klein and Goldzband enforced Chipps violations (¶ 59) (*Knick v.

18 Township of Scott*), causing $152M+ in losses with no compensation provided for either property.

19 ##### COUNT VI: 42 U.S.C. § 1983 – Civil Conspiracy

20 126. All Defendants, acting under color of state law or in conspiracy, agreed to deprive Plaintiffs of

21 their constitutional rights through a coordinated scheme. Siegel and Fernandez, through SFEI,

22 falsified EcoAtlas (¶¶ 26-32) as the foundation. SFEI maintained and disseminated this data to

23 enable state actors' actions (¶¶ 26-35). Chappell reported Chipps and Point Buckler violations (¶¶

   38-44, 57-58). Moffatt, Galacatos, and Lee suppressed permits and enforced the Chipps sale (¶¶ 41-

24 52, 61). Klein pursued enforcement (¶ 42, 59). Goldzband supported (¶¶ 47, 67). Carringer, Cannon,

25 Bullock, White, and Eukel executed the Point Buckler sale (¶¶ 78-93) (*Dennis v. Sparks*, 449 U.S.

26 24). This agreement and overt acts caused $152M+ in losses.

27

28 ##### COUNT VII: 42 U.S.C. § 1983 – Eighth Amendment Excessive Fines

127. Defendants White, Cannon, Bullock, Klein, Goldzband, and SFEI, acting under color of state law or in conspiracy, imposed excessive fines under the Eighth Amendment, totaling $41M (reduced to $4.8M plus $9M) (Exs. Y, AA, ¶ 47), for alleged levee repair violations. These fines, pursued via the sale motion (¶ 89) and enforcement, including Chipps Island (¶ 59), relied on SFEI's falsified EcoAtlas data (¶¶ 26-35) and were disproportionate to any harm (*Timbs v. Indiana*, 139 S. Ct. 682), causing financial ruin.

##### COUNT VIII: 42 U.S.C. § 1983 – Abuse of Process

128. Defendants Carringer, Cannon, Bullock, and White, acting under color of state law, abused legal process with motions (Exs. U, Y), OSCs (Ex. N), the sale (Ex. AA), writ (Ex. T), and TRO (Ex. NN) (¶¶ 71-105), with the improper purpose of harassing and silencing Plaintiffs (*Younger v. Harris*, 401 U.S. 37), causing significant distress and loss.

##### COUNT IX: 42 U.S.C. § 1983 – Fifth Amendment Takings (Post-Sale Writ)

129. Defendants White and Cannon, acting under color of state law, effected an unconstitutional taking under the Fifth Amendment via the March 4, 2025, writ for $1,328,017.75 (Ex. T) after Eukel's $3,783,770.77 bid satisfied the judgment (Ex. CC, ¶¶ 93-94). This pursued waived fees without standing (¶ 98) and provided no compensation (*Knick v. Township of Scott*), causing further harm.

##### COUNT X: BIVENS – Fourth, Fifth, and Fourteenth Amendment Violations

130. Defendants Moffatt, Galacatos, and Lee, acting under federal authority in their individual capacities, violated Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights. They suppressed permits (Ex. I), forced Chipps's sale through strong-arm tactics (¶ 61), and denied due process via the 2016 pact (Ex. K), violating *Bivens*. Damages: $116.4M from Chipps.

##### COUNT XI: Violation of RICO, 18 U.S.C. § 1962(c)

131. All Defendants conducted a racketeering enterprise—a group of state and federal officials and SFEI—via mail fraud (Exs. H, NEW-C1-C7), wire fraud (Ex. J), obstruction (Ex. 10), extortion (Exs. Y, AA), and tampering (Exs. I, K, 539, NN) (¶¶ 26-105), including Chipps sale tactics (¶¶ 57-61), causing $152M+ in damages (*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229). SFEI, through Siegel and Fernandez, orchestrated the EcoAtlas fraud to secure grants, constituting a pattern of

racketeering activity (¶¶ 26-35).

#### PRAYER FOR RELIEF

132. Declaratory judgment of First, Fourth, Fifth, Eighth, and Fourteenth Amendment violations under 42 U.S.C. § 1983 against state actors and SFEI.

133. Declaratory judgment of Fourth, Fifth, and Fourteenth Amendment violations under *Bivens* against federal actors.

134. Declaratory judgment of civil conspiracy under 42 U.S.C. § 1983.

135. Declaratory judgment of RICO violations (18 U.S.C. § 1962(c)).

136. Permanent injunction against enforcing the May 31, 2024, TRO (Ex. NN).

137. Permanent injunction against enforcement based on the satisfied September 3, 2021, judgment (Ex. CC).

138. Order vacating the January 22, 2025, sale (Ex. AA) and restoring title to Point Buckler.

139. Order vacating the March 4, 2025, writ (Ex. T) and requiring White to file a Satisfaction of Judgment.

140. Order canceling the May 15, 2024, Order Cancelling Instruments (Ex. D), restoring the $3.2M deed.

141. Compensatory damages of $165 million for the loss of Point Buckler (over $36M net loss) and Chipps ($116.4M net loss), adjusted for clarity.

142. Additional damages of $500 million for a decade of pain, suffering, stress, trauma, illegal incarceration, decimated credit, loss of the Point Buckler duck club business, and reputational damage as "environmental offenders" caused by Defendants' actions, including the conspiracy, denial of counsel, and retaliatory arrests.

143. Total monetary damages of $665 million ($165M in property losses plus $500M in additional damages).

144. Punitive damages against Carringer, Cannon, Bullock, White, Siegel, Fernandez, Goldzband, Chappell, Moffatt, Galacatos, Lee, Eukel, Klein, and SFEI for their malicious, wanton, and oppressive conduct.

145. Treble damages under 18 U.S.C. § 1964(c) for RICO violations.

146. Costs and fees under 42 U.S.C. § 1988, if counsel appointed.

147. Investigation into Siggins' 2021 reversal (Exs. HH-JJ) and Mueller's rulings (Exs. UU, XX) for bias.

148. Criminal referral for Siegel, Fernandez, Chappell, Moffatt, Galacatos, Goldzband, Lee, and SFEI for fraud, obstruction, and racketeering.

149. Other just relief as the Court deems appropriate.

#### REQUEST FOR JUDICIAL NOTICE

150. Pursuant to Federal Rule of Evidence 201, Plaintiffs request this Court take judicial notice of certain facts and documents not subject to reasonable dispute, as they are generally known within the Court's jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

151. **Newspaper Articles on Counsel Denial and Sham Auction**: Multiple news stories have reported on Judge Carringer's denial of legal counsel to Plaintiffs and the sham January 22, 2025, sheriff's sale of Point Buckler, corroborating Plaintiffs' allegations (¶¶ 1, 93, 102, 112, 118). These articles are widely circulated, publicly available, and their accuracy is not reasonably disputed, making them proper for judicial notice (*Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010)).

152. **Purpose**: Judicial notice establishes the public record of Carringer's misconduct and the sham auction, supporting Plaintiffs' claims of due process violations (Count I), unreasonable seizures (Count II), and abuse of process (Count VIII), and negating Carringer's judicial immunity (¶¶ 111-119).

153. **News Story Links**: The following articles are submitted for judicial notice (links to be provided by Plaintiffs upon filing, or hard copies if required):

 a. Daily Republic, January 21, 2025, announcing winning bidder one day before sale to John Muir Land Trust to show sham auction: https://www.dailyrepublic.com/news/john-muir-land-trust-gains-bidding-edge-for-point-buckler-auction/article_1446078c-d848-11ef-91b4-079c64a923ab.html

 b. The Daily Muck, January 23, 2025, "Eco-Tyranny in California," reporting the January 22, 2025, sham auction and arrests (Ex. P): https://dailymuck.com/eco-tyranny-in-california/

 c. The Daily Muck, January 21, 2025, "Fake Fish Restorations Killed California's Delta Smelt," exposing the fish restoration fraud: https://dailymuck.com/fake-restorations-killed-californias-delta-smelt/

 d. Daily Republic, January 23, 2025, "John Muir Wins Auction, Sweeney Denied Counsel": https://www.dailyrepublic.com/news/john-muir-land-trust-is-new-owner-of-buckler-island/article_fbdeb4fe-d8fc-11ef-9607-6399903be027.html

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

e. San Francisco Chronicle/SFGATE, January 22, 2025, "Auction Descends into Chaos at Point Buckler": https://www.sfgate.com/local/article/san-francisco-island-owner-arrested-auction-20049689.php

f. CBS News, January 22, 2025, live television coverage, "Chaos at Point Buckler Auction": https://www.cbsnews.com/sacramento/news/chaos-at-private-island-sale-in-solano-county-former-owner-arrested/

g. Contra Costa Herald, January 27, 2025, "John Muir Land Trust Announces Acquisition of Point Buckler": https://contracostaherald.com/john-muir-land-trust-announces-acquisition-of-point-buckler/

h. Daily Mail UK, January 22, 2025, auction coverage: https://www.dailymail.co.uk/news/article-14314039/amp/billionaire-owner-private-island-arrested-auction-john-sweeney.html

i. Latitude 38, January 24, 2025, "Sheriff Sale of Point Buckler Island": https://www.latitude38.com/lectronic/john-sweeney-arrested-point-buckler-island/

154. Plaintiffs request the Court take judicial notice of these articles to establish the facts of Carringer's counsel denials and the sham auction as matters of public record, without admitting the truth of any opinions therein.

#### REQUEST FOR JURY TRIAL

155. Plaintiffs demand a jury trial on all triable issues.

#### MOTION TO STAY ALL LAWSUITS

156. Plaintiffs move to stay *FCS057728*, *FCS048136*, *CU24-04182*, *CU24-01789* (SFRWQCB v. Sweeney, Frost), and *United States v. Sweeney* (Case No. 2:17-cv-00112-KJM-SCR) pending this action.

1

2   DATED: April 7, 2025

3   /s/ John Donnelly Sweeney                                    /s/ Jennifer Frost

4

5

6   JOHN DONNELLY SWEENEY, in pro se              JENNIFER FROST, in pro se

7   3826 Denverton Rd., Suisun, CA 94585              3826 Denverton Rd. Suisun, CA 94585

8   Email: captainjohnsweeney@gmail.com              Email: collectfrost@gmail.com

9   (415) 686-0907                                              (415)272-2560

10  @bucklerisland on X

11

12  ### EXHIBIT LIST IN SUPPORT OF COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983,

13  BIVENS ACTION, UNCONSTITUTIONAL TAKINGS, EXCESSIVE FINES, CIVIL

14  CONSPIRACY, FRAUDULENT DEPRIVATION OF PROPERTY, ABUSE OF PROCESS, AND

15  RACKETEERING

16

17  Plaintiffs JOHN DONNELLY SWEENEY and JENNIFER FROST, appearing in pro se, submit this

18  Exhibit List in support of their Complaint filed April 15, 2025. These exhibits, referenced in the

19  Complaint (paragraphs 1-160), substantiate Plaintiffs' allegations of a decades-long conspiracy to

20  defraud them of Point Buckler Island and Chipps Island, valued at $165 million, through falsified

21  EcoAtlas data, fraudulent enforcement actions, and judicial misconduct. As pro se litigants, Plaintiffs

22  do not attach the exhibits, consisting of thousands of pages, because all documents are publicly

23  available on court websites, including Solano County Superior Court (Case Nos. FCS048136, CU24-

24  04182), California Courts of Appeal (Case Nos. A153583, A153585, A153582), and PACER

25  (*United States v. Sweeney*, Case No. 2:17-cv-00112-KJM-SCR). For any exhibit not locatable on

26  these public dockets, parties may contact John Donnelly Sweeney

27  at captainjohnsweeney@gmail.com. Its estimated over the decade legal battle there are more than

28  50,000 pages of public documents for the multi agency lawsuits in State and Federal Court.

#### EXHIBITS

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

1. **Exhibit A**: *September 13, 2022, Disqualification Statement and Order* - Plaintiffs' motion to disqualify Judge Christine Carringer, stricken September 22, 2022 (Complaint, para. 96(b)).

2. **Exhibit B**: *July 6, 2023, Disqualification Statement and Order* - Plaintiffs' motion to disqualify Carringer, stricken July 14, 2023, with threats of arrest (Complaint, para. 96(c)).

3. **Exhibit C**: *March 25, 2024, CCP § 170.6 Motion and Order* - Successful motion removing Carringer from Case No. CU24-01789 (Complaint, para. 96(d)).

4. **Exhibit D**: *May 15, 2024, Order Cancelling Instruments* - Carringer's order canceling Plaintiffs' $3.2 million Deed of Trust and Promissory Note (Complaint, paras. 101, 108).

5. **Exhibit E**: *February 4, 2025, Disqualification Statement and Order* - Plaintiffs' motion to disqualify Carringer, stricken February 13, 2025 (Complaint, para. 96(f)).

6. **Exhibit F**: *January 14, 2016, California River Watch Notice of Intent to Sue* - Notice under the Endangered Species Act against Sweeney (Complaint, para. 94).

7. **Exhibit G**: *2021 California River Watch Settlement Agreement* - Settlement extracting $40,000 in fees and $200,000 to Siegel's study (Complaint, para. 95).

8. **Exhibit H**: *December 20, 2018, Deposition Transcript of Stuart Siegel* - Siegel's testimony admitting no legal basis for his 2016 report (Complaint, paras. 50, 95).

9. **Exhibit I**: *December 14, 2018, Deposition Transcript of Katerina Galacatos* - Galacatos admitting Sweeney's 2015 RGP 3 permit was unprocessed (Complaint, para. 65).

10. **Exhibit J**: *December 21, 2018, Deposition Transcript of William Lee* - Lee's testimony on EPA enforcement and permit status (Complaint, paras. 67, 77).

11. **Exhibit K**: *Deposition Transcript of Adrienne Klein and Related Emails* - Klein's testimony and emails showing prejudgment (Complaint, paras. 66, 78).

12. **Exhibit L**: *December 18, 2018, Deposition Transcript of Steven Chappell* - Chappell's testimony on SRCD's role and reporting (Complaint, paras. 57, 62).

13. **Exhibit M**: *February 28, 2025, Solano County Superior Court Notice* - Notice continuing OSC hearing to March 19, 2025 (Complaint, para. 120).

14. **Exhibit N**: *March 19, 2025, Orders to Show Cause and Bench Warrants* - Carringer's defective OSCs and warrants (Complaint, para. 121).

15. **Exhibit O**: *March 13, 2025, Ex Parte Motion* - Plaintiffs' motion to dismiss OSC and vacate sale (Complaint, para. 122).

16. **Exhibit P**: *January 23, 2025, The Daily Muck Article* - "Eco-Tyranny in California" reporting Sweeney's arrest and sale errors (Complaint, para. 123).

17. **Exhibit Q**: *August 24, 2022, Fees and Costs Award* - $1,067,010.28 award omitted from 2023 writ (Complaint, para. 125).

18. **Exhibit R**: *August 23, 2023, Writ of Execution* - Writ (Levy File No. 2023003172), expired February 19, 2024 (Complaint, para. 116).

19. **Exhibit S**: *September 12, 2024, Memorandum of Costs After Judgment* - Cannon's filing misstating judgment amount (Complaint, para. 118).

20. **Exhibit T**: *March 13, 2025, Motion to Vacate Writ and March 4, 2025, Writ* - Plaintiffs' motion and SFRWQCB's $1,328,017.75 writ (Complaint, paras. 119, 125).

21. **Exhibit U**: *April 15, 2024, Motion for Order Cancelling Instruments* - Cannon's motion to cancel 2015 Deed and Note (Complaint, para. 99).

22. **Exhibit V**: *March 10, 2023, Bankruptcy Filing* - Point Buckler Club, LLC, Chapter 11 filing (Case No. 23-20755) (Complaint, para. 106).

23. **Exhibit W**: *June 10, 2023, Disclosure Statement and Plan of Reorganization* - Bankruptcy plan listing $3.2 million deed (Complaint, para. 107).

24. **Exhibit X**: *July 10, 2023, Bankruptcy Dismissal Order* - Dismissal of Case No. 23-20755 (Complaint, para. 107).

25. **Exhibit Y**: *April 15, 2024, Motion for Supplemental Notice of Sale* - Cannon's motion for Point Buckler sale (Complaint, para. 110).

26. **Exhibit Z**: *April 17, 2024, Declaration of Bryant Cannon* - Declaration supporting sale motion (Complaint, para. 111).

27. **Exhibit AA**: *May 15, 2024, Order for Sheriff's Sale* - Carringer's order, executed January 22, 2025 (Complaint, para. 112).

28. **Exhibit BB**: *November 25, 2024, Assignment and Acceptance Agreement; December 11, 2024, Acknowledgment* - SFRWQCB-JMLT judgment assignment (Complaint, para. 113).

29. **Exhibit CC**: *January 22, 2025, Sheriff's Sale Confirmation; January 17, 2025, JMLT Notice* - Sale for $3,783,770.77 and JMLT confirmation (Complaint, para. 114).

30. **Exhibit DD**: *November 25, 2024, Letter from Bryant Cannon to Sheriff* - Anticipating judgment assignment, noting Sheriff's inexperience with public sales (Complaint, paras. 22, 26, 117).

31. **Exhibit EE**: *2017 Solano Superior Court Ruling (FCS048861 - SFRWQCB CAO)* - Kinnicutt's ruling finding no violations (Complaint, para. 127).

32. **Exhibit FF**: *2017 Solano Superior Court Ruling (FCS048861 - $2.828M ACL Order)* -

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

Kinnicutt's ruling on SFRWQCB fines (Complaint, para. 127).

33. **Exhibit GG**: *2017 Solano Superior Court Ruling (FCS048136 - BCDC $772,000 Order)* - Kinnicutt's ruling on BCDC fines (Complaint, para. 127).

34. **Exhibit HH**: *February 18, 2021, Appellate Reversal (A153583)* - Siggins' reversal of FCS048861 CAO (Complaint, para. 128).

35. **Exhibit JJ**: *February 18, 2021, Appellate Reversals (A153585, A153582)* - Siggins' reversals of FCS048861 ACL and FCS048136 (Complaint, para. 128).

36. **Exhibit KK**: *September 3, 2015, Email from John Bowers* - BCDC counsel stating no SMPA/MPA violation (Complaint, para. 87).

37. **Exhibit LL**: *May 29, 2024, Declaration of Eileen White* - White's declaration alleging harassment (Complaint, para. 92).

38. **Exhibit MM**: *May 29, 2024, Declaration of Bryant Cannon* - Cannon's declaration with Sweeney's email and press release (Complaint, paras. 89-90).

39. **Exhibit NN**: *May 31, 2024, Temporary Restraining Order (CU24-04182)* - Carringer's TRO against Sweeney (Complaint, para. 92).

40. **Exhibit OO**: *May 9, 2024, Order Granting Motions* - Carringer's order on Cannon's motions (Complaint, para. 91).

41. **Exhibit TT**: *United States v. Sweeney Initial Filing and 2019 Ruling* - Complaint and Mueller's 2019 ruling (483 F. Supp. 3d 871) (Complaint, para. 82).

42. **Exhibit UU**: *2020 Order Reopening United States v. Sweeney* - Mueller's sua sponte reopening (Complaint, para. 83).

43. **Exhibit WW**: *2020 Assignment to Magistrate Peterson* - Assignment in *United States v. Sweeney* (Complaint, para. 83).

44. **Exhibit XX**: *February 12, 2025, Restoration Order* - Mueller's order in *United States v. Sweeney* (Complaint, para. 85).

45. **Exhibit 10**: *EcoAtlas Removal Documentation* - SFEI's removal of Point Buckler and Chipps post-2015 PRA (Complaint, paras. 74, 132).

46. **Exhibit 15**: *July 20, 2015, Email from Stuart Siegel to Christina Toms* - Siegel's email re: Sweeney's threats (Complaint, para. 75).

47. **Exhibit 16-18**: *May 19, 2016, Emails from Stuart Siegel to Ian Wren* - Siegel's talking points to vilify Sweeney (Complaint, para. 80).

48. **Exhibit 501**: *February 2, 2015, RGP 3 Application* - Sweeney's unprocessed permit

1    application (Complaint, para. 65).

2    49. **Exhibit 534**: *July 2015 Email re: Unprocessed Permit* - Klein's knowledge of permit

3    status (Complaint, para. 66).

4    50. **Exhibit 539**: *January 14, 2016, Confidentiality Agreement* - Moffatt's agreement to sue

     Plaintiffs (Complaint, para. 76).

5    51. **Exhibit 541**: *June 2016 Compromise Offer* - Sweeney's ignored offer (Complaint, para.

6    78).

7    52. **Exhibit 543**: *July 2016 Plan* - Sweeney's ignored plan (Complaint, para. 78).

8    53. **Exhibit 547**: *Chappell's Reporting Records* - Chappell's reports to agencies (Complaint,

9    para. 35).

10   54. **Exhibit 548**: *June 24, 2011, SRCD Submission* - Chappell's unauthorized reporting

11   (Complaint, para. 62).

12   55. **Exhibit 551**: *June 22, 2011, Container Plan* - Sweeney's emergency repair plan

     (Complaint, para. 62).

13   56. **Exhibit 552**: *Chappell's Additional Reporting* - Further reports on Sweeney (Complaint,

14   para. 68).

15   57. **Exhibit 554**: *Photographs of Point Buckler* - Chappell's evidence used against Sweeney

16   (Complaint, para. 68).

17   58. **Exhibit 577**: *February 16, 2016, Chappell Statement to Matthias Gafni* - Chappell's tidal

18   marsh claim (Complaint, para. 64).

19   59. **Exhibit NEW-C**: *Siegel Emails (SIEGEL0001882-1884, SIEGEL0001843-1846,

     SIEGEL0001869)* - February 12, 2016, Gafni email; May 6, 2015, Wells email; May 13-14, 2015,

20   Sweeney confrontation (Complaint, paras. 51, 53-54).

21   60. **Exhibit NEW-C1**: *December 10, 2014, Email to Kristal Davis-Fadtke (AJ EXHIBIT 587)*

22   - Siegel's enforcement alert (Complaint, para. 52).

23   61. **Exhibit NEW-C3-C6**: *May 13-14, 2015, Emails and Responses (AJ EXHIBITS 501, 530,

24   341, SIEGEL0001869)* - Sweeney-Siegel exchange and Schweitzer confirmation (Complaint, para.

     54).

25   62. **Exhibit NEW-C7**: *May 14, 2015, Email to Jake Schweitzer (SIEGEL0001870)* - Siegel's

26   "HIGH RISK" warning (Complaint, para. 55).

27   63. **Exhibit NEW-F**: *February 16, 2016, Chappell Statement to Matthias Gafni (AJ EXHIBIT

28   577)* - Chappell's tidal marsh claim (Complaint, para. 64).

COMPLAINT FOR VIOLATIONS 42 U.S.C. 1983. BIVENS ACTIONS. UNCONSTITUTIONAL TAKINGS

64. **Exhibit NEW-F1**: *2011-2014 Emails to BCDC and Corps (USACE0040286-87)* - Chappell's false reports (Complaint, para. 63).

65. **Exhibit NEW-F2**: *December 8, 2015, EPA Email (USEPA0008594)* - Jessica's note on BCDC enforcement (Complaint, para. 69).

#### NOTICE OF PUBLIC AVAILABILITY

All exhibits listed above are publicly available on court websites: Solano County Superior Court (https://www.solano.courts.ca.gov/) for Case Nos. FCS048136, FCS057728, CU24-01789 and CU24-04182; California Courts of Appeal (https://appellatecases.courtinfo.ca.gov/) for Case Nos. A153583, A153585, and A153582; and PACER (https://pacer.uscourts.gov/) for *United States v. Sweeney* (Case No. 2:17-cv-00112-KJM-SCR). The key depositions of Siegel, Chappell, Lee, Galacatos, Klein plus exhibits 500-650 from Federal court can be found at https://baystewards.com/usa-v-point-buckler-club/ . All Chapter 11 Federal files on PACER (https://pacer.uscourts.gov/) under Point Buckler Club LLC (Case No. 23-20755) open March 10, 2023 closed August 4, 2024 Judge Troy Nunley.

Should any exhibit not be locatable due to clerical errors, restricted access, or other issues, parties may contact John Donnelly Sweeney at captainjohnsweeney@gmail.com for assistance in obtaining the document, subject to pro se limitations.

DATED: April 7, 2025

/s/ John Donnelly Sweeney

/s/ Jennifer Frost

JOHN DONNELLY SWEENEY, in pro se
3826 Denverton Rd., Suisun, CA 94585
Email: captainjohnsweeney@gmail.com
(415) 686-0907
@bucklerisland on X

JENNIFER FROST, in pro se
3826 Denverton Rd. Suisun, CA 94585
Email: collectfrost@gmail.com
(415)272-2560