UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JOHN DONNELLY SWEENEY, et al., | Case No. 25-cv-03148-JST |
| Plaintiffs, | |
| v. | **ORDER DISMISSING CASE FOR LACK OF JURISDICTION** |
| CHRISTINE CARRINGER, et al., | Re: ECF Nos. 141, 121, 136, 143, 152, 179, |
| Defendants. | 207, 239 |

Before the Court are briefs responding to the Court's order to show cause why the case should not be dismissed for lack of jurisdiction, ECF No. 141, filed by Plaintiffs John Sweeney and Jennifer Frost, ECF No. 172; Defendants San Francisco Estuary Institute ("SFEI"), Warner Chabot, Dr. John Callaway, Cristina Grosso, and Joshua Collins, ECF No. 211; Defendants Bryant Cannon, Matthew Bullock, Eileen White, Agnes Farres, Xavier Fernandez, David Coupe, Adrienne Klein, and Larry Goldzband, ECF No. 213; and Defendants Bernadette Curry, Thomas Ferrara, and the County of Solano, ECF No. 215. Also before the Court are sixteen motions to dismiss filed by most of the thirty-six defendants in various combinations. ECF Nos. 118, 121, 136, 143, 152, 179, 196, 198, 204, 207, 212, 226, 231, 234, 239, 251.

The Court first dismisses most of Plaintiffs' claims as barred by *Rooker-Feldman*. Three claims are not affected by that portion of the Court's order: claim four, which alleges a taking without just compensation in violation of the Fifth Amendment; claim seven, which alleges *Bivens* causes of action; and claim ten, which alleges *Monell* liability against Defendants Solano County and Suisun Resource Conservation District.

The Court then resolves the remaining claims as follows. All claims against Judge Carringer are dismissed because she is subject to absolute judicial immunity. Claim seven is

dismissed with prejudice because Plaintiffs have not justified extending *Bivens* into a new context and will be unable to do so.  Claim ten is also dismissed because Plaintiffs cannot adequately plead *Monell* liability.

All remaining claims against State Defendants Cannon, Bullock, White, Klein, Goldzband, and Defendant Sheriff Ferrara are dismissed because they are subject to immunity under the Eleventh Amendment.  Remaining claims under Section 1983 against Defendants Eukel, Siegel, and San Francisco Estuary Institute are dismissed because they did not act "under color of state law."  All claims are dismissed.

## I.    BACKGROUND

The following allegations are taken from the amended complaint, ECF No. 82.  Plaintiffs allege a sprawling "25-year racketeering enterprise" orchestrated by members of the Suisun Resource Conservation District (SRCD) and the San Francisco Estuary Institute (SFEI) "to defraud federal and state agencies of millions in grants by falsely claiming completed tidal fish restorations on private and military lands, including Point Buckler Island and Chipps Island," both of which were owned by the Plaintiffs.  *Id.* ¶ 1.  When Plaintiff Sweeney threatened to reveal this fraud, "Defendants launched a decade-long campaign of retaliatory lawsuits, excessive fines, and judicial misconduct to silence and bankrupt" Plaintiffs, resulting in a sheriff's auction of Point Buckler Island in January 2025.  *Id.*  Plaintiffs bring claims against thirty-six defendants for: violations of 42 U.S.C. § 1983 under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; *Monell* liability; *Bivens* violations of the Fourth, Fifth, and Fourteenth Amendments; and violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO").

On July 24, 2025, the Court issued an order denying Plaintiffs' motion for temporary restraining order and ordering Plaintiffs to show cause why the case should not be dismissed for lack of jurisdiction.  ECF No. 141.  Plaintiffs filed a response on August 7, 2025.  ECF No. 172.  Defendants affiliated with SFEI, the state, and the County of Solano filed responses on August 20, 2025 and August 21, 2025.  ECF Nos. 211, 213, 215.  Various defendants filed motions to dismiss between July 21, 2025 and September 5, 2025.  ECF Nos. 118, 121, 136, 143, 152, 179, 196, 198,

United States District Court
Northern District of California

204, 207, 212, 226, 231, 234, 239, 251.  Between August 3, 2025 and August 28, 2025, Plaintiffs moved to strike several of the pending motions to dismiss. ECF Nos. 161, 163, 164, 224, 238.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, mere legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79.

"Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint must be dismissed under Rule 12(b)(1) where it fails to adequately allege a basis for this Court to exercise subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In addition, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  The plaintiff always bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## III.    DISCUSSION

### A.    *Rooker-Feldman*

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered

3

before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Thus, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Because "state courts are as competent as federal courts to decide federal constitutional issues," this rule applies even where "the challenge to the state court decision involves federal constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).

Under the *Rooker-Feldman* doctrine, "[a] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal [and,] [a]s part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court." *Noel*, 341 F.3d at 1158. "A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (internal quotation marks and citations omitted).

The Supreme Court has emphasized that the *Rooker-Feldman* doctrine occupies narrow ground. *See Exxon Mobil Corp.*, 544 U.S. at 280–81; *Lance*, 546 U.S. at 464. It does not apply to claims alleging misconduct by adverse parties—particularly extrinsic fraud—even if those claims imply the invalidity of state judgments. *See Cogan v. Trabucco*, 114 F.4th 1054, 1064 (9th Cir. 2024) ("Our caselaw has further narrowed the doctrine as applying only to suits alleging errors by the state courts in rendering judgment, as opposed to misconduct by litigants in obtaining such a judgment."); *Miroth v. County of Trinity*, 136 F.4th 1141, 1150 (9th Cir. 2025) (holding that "when the federal plaintiff sues an adverse party from a state court proceeding and claims that the adverse party fraudulently procured the state court judgment," such suits do not run afoul of *Rooker-Feldman*). *Rooker-Feldman* also does not apply to facial challenges to the lawfulness or a policy that governed the outcome of a particular state court decision. *See Skinner v. Switzer*, 562

4

U.S. 521, 532 (2011) (explaining that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action"); *Feldman*, 460 U.S. at 487 (explaining that such challenges "do not require review of a judicial decision in a particular case").

Here, the *Rooker-Feldman* doctrine bars most of Plaintiffs' claims. The primary factual bases for Plaintiffs' complaint arise from the adjudication of the underlying state court proceedings, and thus the suit is "contingent upon a finding that the state court decision was in error." *Cooper v. Ramos*, 704 F.3d 772, 782 (9th Cir. 2012). Plaintiffs' claims are premised on the orders issued and the procedural violations allegedly committed during those proceedings. *See Allah v. Superior Court*, 871 F.2d 887, 891 (9th Cir. 1989) (under *Rooker-Feldman*, district courts lack subject-matter jurisdiction to "scrutinize the state court's application of various rules and procedures pertaining to [the] case"), *superseded by rule on other grounds*, *as stated in Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273 (9th Cir. 2010).

Consider Plaintiffs' first claim for violations of his procedural due process rights. He alleges that Defendant Judge Carringer cancelled his $3.2 million deed for Point Buckler Island without quiet title, that certain State Defendants filed a deed cancellation motion, "pursued enforcement," "directed enforcement," or filed an improper TRO, that Defendants Chappell, Siegel, and SFEI provided false information leading to the cancellation, and that Defendant Eukel "colluded in a pre-arranged auction." ECF No. 82 at 75–76. These claims in their entirety target the state court proceedings and judgment cancelling Plaintiffs' deed to Point Buckler and authorizing an auction. *Id.* at 57 (¶ 130). Claims two and three are equally clear challenges to state court judgments: claim two also challenges the Point Buckler auction, but on Fourth Amendment Unlawful Seizure grounds, and claim three challenges Judge Carringer's issuance of a TRO, alleging that Carringer issued and others sought and supported the TRO to "silence protests." *Id.* at 76–78. Claim five, for excessive fines under the Eighth Amendment, is also clearly barred because the fines were imposed via a state court judgment. *Id.* at 79.

Plaintiffs argue that their claims are not barred by *Rooker-Feldman* because they allege extrinsic fraud on the state court tribunal—a class of claims that the Ninth Circuit has repeatedly

found not to be barred by *Rooker-Feldman*. ECF No. 172 at 9–10; *see Miroth*, 136 F.4th at 1150. The problem with this argument is that Plaintiffs do not allege extrinsic fraud. Rather, they allege an extensive, wide-reaching conspiracy of which the state court judge who issued the state court judgment at issue was *an essential part*. *See generally* ECF 82. As Plaintiffs themselves repeatedly emphasize, the civil conspiracy and RICO claims, claims six, eight, and nine, are the heart of his case, and those claims allege not only that Judge Carringer's decisions and their legal effects were the culminating result of the conspiracy, but that she was a member of the conspiracy, and that her decisions were a key mechanism through which the conspiracy acted, rather than a passive target of its efforts. ECF No. 82 at 79–80, 81–83. Plaintiffs' fraud claims therefore uniquely allege error in the state court decision, rather than acts by third parties that merely incidentally led the state court to a wrongful outcome. *Cf. Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004) (explaining that extrinsic fraud claims do not implicate *Rooker-Feldman* because "[e]xtrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud").

At bottom, Plaintiffs' claims challenge the decisions of the California Superior Court. For this court to grant the relief sought would necessarily require the Court to "review and reject[]" those decisions. *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 284 (2005)). This case is thus "a forbidden de facto appeal from [the] judicial decision[s] of" the California courts that the Court "must refuse to hear" under *Rooker-Feldman*. *Noel*, 341 F.3d at 1158.

The Court identifies, however, three claims that are not barred by *Rooker-Feldman*: claim four, which alleges a taking without just compensation in violation of the Fifth Amendment, claim seven, which alleges *Bivens* causes of action, and claim ten, which alleges *Monell* liability against Defendants Solano County and Suisun Resource Conservation District.

The Ninth Circuit recently decided *Searle v. Allen*, which held that claims for just compensation for a taking effected pursuant to a state court judgment are not barred by *Rooker-Feldman* because the right to compensation survives the judgment. 148 F.4th 1121, 1130 (2025). In fact, the validity of a claim for just compensation *depends on* and *arises from* the validity of the

6

state court judgment effecting the taking. *Id*. at 1131–32. But *Searle* was explicit that only claims for just compensation are exempt from *Rooker-Feldman*. Insofar as the taking itself was effected pursuant to a state court judgment, any argument that it was procedurally or constitutionally defective remains barred. *Id*. at 1130–31. This means that Plaintiffs' allegations against Defendants Chappell, Siegel, and SFEI, for providing false information to state actors and thereby prompting the taking, are barred. Claims that the taking was erroneous are barred by *Rooker-Feldman*, while claims that just compensation is owed for the taking are not. *Searle*, 148 F.4th at 1130–32.

Next, the *Monell* claim is not barred by *Rooker-Feldman* because it takes aim not at the particular state court decisions that allegedly violated Plaintiffs' rights, but the municipal policies that authorized those outcomes. *See Skinner*, 562 U.S. at 532. Finally, the *Bivens* claim appears not to be directly tied to a state court judgment and at least plausibly survives *Rooker-Feldman*. ECF No. 82 at 80–81.

This order disposes of the remaining claims as follows. Claims seven and ten are dismissed with prejudice because Sweeney cannot state a claim under *Bivens* or *Monell* under the circumstances. That leaves the remaining defendants named in claim four: Carringer, Cannon, Bullock, White, Ferrara, Eukel, Klein, and Goldzband. Defendant Carringer is dismissed with prejudice because she is subject to absolute judicial immunity. The state actors—Cannon, Bullock, White, Klein, Goldzband, and Sheriff Ferrara—are dismissed because the claims against them are barred by the Eleventh Amendment. Finally, the claim against Defendant Eukel is dismissed because he is a nonstate actor and Plaintiffs cannot adequately allege that he acted "under color of state law" for purposes of Section 1983.

### B.     *Bivens*

Federal Defendants move to dismiss Plaintiffs' *Bivens* claims against them. ECF No. 143 at 22–26. The Supreme Court has prescribed a two-step framework for evaluating claims against federal officers for violations of constitutional rights brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). At the first step, courts must ask whether any "meaningful differences" distinguish the case at hand from one of the three *Bivens*

7

actions recognized by the Supreme Court. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). Plaintiffs' *Bivens* claims—under the Fourth, Fifth, and Fourteenth Amendments for "sign[ing] [a] confidentiality agreement to sue" plaintiffs, "facilitate[ing]" and "coordinat[ing]" enforcement of the sale of one of Sweeney's properties, "suppress[ing] [a] RGP-3 permit, escalat[ing] enforcement," and "monitor[ing] Sweeney's activities"—do not remotely resemble the existing *Bivens* causes of action. ECF No. 82 at 80–81.

Claims that do not match an existing *Bivens* cause of action proceed to the second step of analysis, which requires the Court to consider whether "there are special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136. The second step focuses on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

One "special factor counselling hesitation" at the second step is the existence of an alternative remedy. *Egbert*, 596 U.S. at 493 ("[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" (quoting *Ziglar*, 582 U.S. at 137)). In *Egbert*, the relevant alternative remedy was an administrative grievance procedure within the agency employing the federal officer. *Id*. at 497–98. Similar internal grievance and disciplinary procedures are available here to address Plaintiffs' complaints against the federal defendants, who are employees of the U.S. Environmental Protection Agency and Army Corps of Engineers. *See* ECF No. 143 at 25 (describing the investigation procedures of the respective agencies' congressionally-created Offices of the Inspector General).

In their opposition, Plaintiffs recognize this legal framework and therefore "stipulate[s] to dismissal of Bivens claims against Federal Defendants." ECF No. 223 at 18. The *Bivens* claim is dismissed with prejudice.

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.    *Monell*

To prevail on a claim against a municipal entity for a constitutional violation, a plaintiff "must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)); *see Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  A plaintiff can satisfy the *Monell* pleading requirements by alleging "government acts pursuant to an express official policy," "a longstanding practice or custom," or an "committed or ratified by an official with policy-making authority."  *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 811–812 (9th Cir. 2024).  A single instance of alleged unconstitutional action alone does not "prove the existence of a municipal policy or custom."  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–824 (1985)).

Claim ten, for *Monell* liability, alleges that the County of Solano and the Suisun Resource Conservation District are liable for the constitutional violations alleged throughout the complaint because Solano County had a "[p]olicy of allowing Carringer's judicial misconduct" and a "[c]ustom of permitting Ferrara's unlawful arrests" and because SRCD had a "[p]olicy of enabling Chappell's false reporting" and a "[c]ustom of failing to assist landowners like Sweeney."  ECF No. 82 at 83.  Sweeney has identified no non-conclusory policy or practice sufficient to support *Monell* liability.

Moreover, as the County of Solano points out in its motion to dismiss, there is no *Monell* liability against a county for alleged misconduct by officers of the state.  ECF No. 179 at 18–19; *see McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 783 (1997).  California constitutional and statutory law deems sheriffs to be state officers with respect to law enforcement activities, including acting upon a warrant.  *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 836, 839 (2004); *Buffin v. City & Cnty. of San Francisco*, No. 15- CV-04959-YGR, 2016 WL 6025486, at *6 (N.D. Cal. Oct. 14, 2016) (citation omitted).  Ferrara therefore acted as a state, not a county, officer, and all *Monell* claims based on his conduct are dismissed.

Claim ten for *Monell* liability is dismissed.

### D.    Judicial Immunity

Judge Christine Carringer moves to dismiss all claims against her on the grounds that they are barred by judicial immunity.  ECF No. 121 at 15–16.  Judicial officers are entitled to unqualified immunity from civil suits arising out of the exercise of their judicial functions.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  In their opposition, Plaintiffs "stipulate that Defendant Carringer is entitled to judicial immunity from the claims asserted in the FAC, as the actions complained of were performed in her judicial capacity" and "do not oppose dismissal of claims against her on this ground."  ECF No. 219 at 8–9.  Carringer is therefore dismissed from this action with prejudice.

### E.    Eleventh Amendment

Sheriff Thomas Ferrara, State Defendants Cannon, Bullock, White Fernandez, Klein, and Goldzband, the County of Solano, Agnes Farres, David Coupe, and Assembly Member Lori Wilson all move to dismiss on the ground that Sweeney's claims against them in this Court are barred by the Eleventh Amendment.  ECF Nos. 136, 152, 179, 212, 251.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  "States are protected by the Eleventh Amendment from suits brought by citizens in federal court."  *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir.), *amended*, 271 F.3d 910 (9th Cir. 2001) (citing *Hans v. Louisiana,* 134 U.S. 1, 15 (1890)).  "Further, because a suit against a state actor in his official capacity is no different from a suit against the state itself, the Eleventh Amendment also bars damages actions against state officials in their official capacity."  *Guevarra v. Seton Med. Ctr.*, No. C 13-2267 CW, 2013 WL 6235352, at *5 (N.D. Cal. Dec. 2, 2013), *aff'd,* 642 F. App'x 683 (9th Cir. 2016) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 90 (1989)).

The vast majority of allegations raised in the complaint—and the entirety of the sole remaining claim for just compensation—pertain to official state actions taken by officials in their

10

official capacities. Plaintiffs sometimes appear to argue that the state officials acted in their individual, rather than official, capacities, but the argument is self-defeating: the acts from which Plaintiffs allege harm—the various actions taken by state actors to investigate, prosecute, and enforce the law against them—could only have had an effect if they had been taken on behalf of the state.

There are only three exceptions to Eleventh Amendment immunity, one of which Plaintiffs argue applies here: "[u]nder the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a 'suit against a state official when that suit seeks . . . prospective injunctive relief.'" *Douglas*, 271 F.3d at 817–18 (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996)). Most of the relief that Plaintiffs seek is not prospective injunctive relief. The Eleventh Amendment clearly bars Plaintiffs' request for damages and their request for an order vacating the sheriff's sale of Point Buckler Island and restoring title to him. *See* ECF No. 82 at 96. Their declaratory judgment requests are also retrospective because they seek recognition that past conduct, which is no longer ongoing, violated Plaintiffs' constitutional rights. Plaintiffs' only prospective request is for an injunction barring enforcement of the state court's TRO, which they allege violated their First Amendment rights, but the Court has already dismissed the First Amendment retaliation claim under *Rooker-Feldman*.

Sweeney also argues that California has waived Eleventh Amendment immunity for state employees for nondiscretionary acts under California Government Code § 820(a), which provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person." *See, e.g.*, ECF No. 220 at 15; ECF No. 221 at 12. But various defendants correctly point out that (1) Section 820 only applies to state law claims, which Sweeney does not assert, and (2) Section 820.4 goes on to hold that "a public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." *See, e.g.*, ECF No. 263 at 16–17.

The vast majority of Sweeney's claims against the aforementioned state officials, including his claim four for just compensation for a taking, are barred by the Eleventh Amendment and therefore dismissed with prejudice.

11

F.    **"Under Color of State Law"**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  There is a "presumption that private conduct does not constitute governmental action," which can be overcome only in rare circumstances, including when the private individual engaged in "joint action" with state officials. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836 (9th Cir. 1999).  "The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights,'" which can be shown through evidence of conspiracy or by showing that the private party was a "willful participant" in the joint action. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)).  There must be a "substantial degree of cooperation" between the private actor and the state to support finding there a private actor jointly acted with the state. *Franklin*, 312 F.3d at 445.

In his fourth claim for a taking without just compensation in violation of the Fifth Amendment, Sweeney alleges that Defendant Eukel "accepted [a] pre-arranged bid" and "signed [the] assignment" of Point Buckler Island.  ECF No. 82 at 78.  Eukel's motion to dismiss argues that he should be dismissed from the complaint because it fails to allege that he acted under color of state law.  ECF No. 239 at 22.  The Court agrees that the allegations in the complaint are insufficient to allege a "substantial degree of cooperation" between Eukel and the state.  This claim is dismissed.

## IV.    MOTIONS TO STRIKE

As set forth above, this order resolves the Court's July 24, 2025 order to show cause, ECF No. 141, as well as several of the sixteen motions to dismiss filed by the various defendants.

Plaintiffs moved to strike several of those motions to dismiss, raising meritless procedural arguments.  For instance, they moved strike the federal defendants' motion to dismiss because it failed to notice a hearing date, which is incorrect, and because the defendants did not serve Plaintiff Frost, but she lived at the same address as Sweeney.  ECF Nos. 162, 187.  Likewise,

12

United States District Court
Northern District of California

Plaintiffs moved to strike Defendant Ferrara's motion to dismiss because it was not preceded by a request to meet and confer, it was unaccompanied by a declaration and noticed hearing date, and it was not manually served to Defendant Frost. ECF No. 164. Ferrara's opposition correctly points out that the Northern District rules do not require a meet and confer and do not require a declaration if it does not attempt to establish any factual contentions. ECF No. 193 at 2. The opposition also points out that hearing date was noticed and service was mailed to Frost's last known address, which is adequate under the federal rules. *Id*. at 3. For similar reasons, the remainder of the motions to strike are denied.

### CONCLUSION

The Court notes that this order does not resolve many other issues raised in the motions to dismiss which may constitute equally valid reasons to dismiss the case, including *Younger* abstention based on the many state court enforcement proceedings that are currently pending against Sweeney. Nonetheless, having considered the issues laid out in this order, the Court finds that the record comfortably supports dismissal with prejudice because it is clear that "the complaint could not be saved by amendment" and amendment would be "futile." *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 939 (9th Cir. 2018); *Foman v. Davis*, 371 U.S. 178, 182 (1962). For the foregoing reasons, the Court therefore dismisses the action with prejudice. All motions not disposed of herein are terminated as moot. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
JON S. TIGAR
United States District Judge